SOUTHERN RAILWAY COMPANY IN MISSISSIPPI v. STATE OF
MISSISSIPPI.

[48 South. 236.]

CONSTITUTIONAL LAW. *Railroads. Code* 1906, § 4854. *Erection and
maintenance of depots. Constitution United States, Amend-
ment XIV. Equal protection of law. Due process of law. Con-
stitution* 1890, *sec.* 14.

Code 1906, § 4854, providing that every railroad shall establish and
maintain a depot in every incorporated city, town or village
through which its road passes, does not violate:—

(a) The equal protection of the law guaranteed by the fourteenth
amendment to the constitution of the United States; nor

(b) State constitution 1890, sec. 14, nor the provision of the four-
teenth amendment of the constitution of the United States, each
providing that property shall not be taken without due process
of law, although applied to an incorporated village on a branch
line of railroad being operated at a loss, where the operation of
the entire railroad in the state produces a reasonable profit.

FROM the circuit court of Calhoun county.

HON. JOSEPH T. DUNN, Judge.

The State of Mississippi, suing on the relation of the attorney
general, appellee, was plaintiff in the court below; the railway
company, appellant, was defendant there. The suit was a man-
damus proceeding. From a judgment in plaintiff's favor the
defendant appealed to the supreme court. The facts are fully
stated in the opinion of the court.

*A. T. Stovall,* for appellants.

This appeal was taken from an order of the court below grant-
ing a writ of mandamus issuing in the name of the state,
directed to and requiring the appellants to erect and maintain
a depot in the village of Derma, in compliance with the order of
the railroad commission.

The petition of the railroad commission for a writ of man-
damus asks the court to enforce a strict compliance with its or-

der, which directs that the Southern Railway Company build within ninety days a depot, north of its line of railway and west of Main street in the village of Derma. When the exact purport of this order is carefully scrutinized, it will be observed that the order not only directs the appellant to erect and maintain a depot at Derma, but further designates the exact spot upon which the said depot is to be located. Thus the appellants were wholly precluded at the very outset from selecting the site for the depot, and this was done without authority of law as will be attempted to be shown below.

The supposed authority upon which the railroad commission directed its order against the appellants is section 4863 of the Code of 1906, which reads as follows:—

"Where the site selected by the railroad officials for depot building or a station house, erected or to be erected, is inconvenient or inaccessible, the commission may order the erection of a new building or station house and designate its site or location; but every depot must be located with due regard to the interests of the railroad and the public convenience."

The statute is a rational one, but when we inquire into the reason for its promulgation we cannot but contend that it was intended solely to cure the evil of a railway company selecting an "inconvenient or inaccessible" site for the location of its depot. When a railway company has made such a selection as comes within the above words of the statute, it becomes the duty of the railroad commission to veto such selection, but the statute is no warrant for the commission in going further and designating the exact spot for the location of the depot until the railway company has made a selection of its own. In other words, the railroad commission can only designate the location of the depot after the railroad company has made an "inconvenient or inaccessible" selection.

The petition does not say, neither does the railroad commission's order undertake to say, that north of the railroad company's line and west of Main street in the village of Derma is

the only accessible place for a depot in the village of Derma, or that the same can be obtained for that purpose; yet the railroad company has no right under this order of the commission to locate its depot on any other site, even though it may be able to make more satisfactory terms with the owners of other sites, and even though other places might be just as convenient and suitable to the public.

It is respectfully submitted then, that the order of the commission designating the site for the depot was without authority of law, and further that due regard to the interests of the railroad company and public convenience was not exercised. Due regard to the interests of the railroad company was not exercised because the enforcement of such an order would be tantamount to the giving the railroad commission charge of the purse strings of the railroad company; and the company's officials, who are experienced in the matter of locating stations, and know of its means, would be deprived of their rights in the matter. It can not be maintained that due regard was had for the public convenience for there is no proof of this, and it is quite possible that the interests of the public would have been better subserved by locating the depot on some other site.

The petition for the writ of mandamus does not merely seek to compel the defendant to erect a depot on the line of its road at some point in the village of Derma that will be reasonably subservient to the wants and convenience of the inhabitants and business of that community, leaving the exact location to the discretion necessarily vested in the company in such matters; but in the petition it is sought to compel the company to erect a depot building on that particular spot in the village of Derma designated as north of its line of railroad and west of Main street. *Fla. Cen. & P. R. Co. v. State,* 34 Am. St. Rep. 30; *Wells v. A. G. S. R. R. Co.,* 67 Miss. 24; *State v. Yazoo, etc., R. Co.,* 87 Miss. 679.

The Mississippi railroad commission is a tribunal possessing

statutory powers, and only such powers as are conferred by statute; and nothing can be intended to be within its jurisdiction which is not there by statute, and such being in derogation of the common law "must receive a strict construction." See 2 Elliott on Railroads (2d ed.), secs. 683, 684; *State v. Yazoo, etc., R. Co.,* 87 Miss. 678.

A writ of mandamus will never issue to compel one to do an uncertain or doubtful duty, and it certainly must be doubtful to the court's mind and much more to that of the railroad company, where the railroad company shall, in view of its own rights and the conflict of the order of the court and that of the commission, build its depot. If it is even doubtful, the demurrer should have been sustained, and for that error this court should reverse the judgment and dismiss the cause. *Northern Pac. R. Co. v. Washington Ter.,* 142 U. S. 490; 13 Enc. Pl. & Pr. 496; 1 Elliott on Railroads (2d ed.), sec. 637; *Mobile & Ohio R. R. Co. v. People,* 22 Am. St. Rep. 556.

The lower court by its judgment in effect admitted that this ground of the demurrer was good, because in its judgment awarding the peremptory writ of mandamus it failed to designate the place where the depot should be built. In other words, the decree of the court does not designate the location, and in not doing so is at variance with the order of the commission; and we earnestly insist that the illegality of the railroad commission's order can not be, and is not cured by the decree of the court.

The petition for the writ of mandamus and the answer of the defendants and the plaintiff's replication thereto present clearly and concisely an issue of fact. By section 3334 of the Code of 1906, all issues made by the pleadings shall be tried and disposed of as in other actions in the circuit court. This issue of fact should have been submitted to the jury for its determination under proper instructions from the court.

The issue was clearly joined between the relator and the de-

fendants as will be seen by reference to the pleadings and to the vast amount of proof adduced at the hearing, and surely it was the jury's province to determine these facts. It could have done so and would have done so under proper instructions from the court. This was the purpose of empanelling the jury and taking the proof before it, and the court erred in taking the case from the jury, or rather in peremptorily instructing the jury to find for the plaintiff.

"The question is one of fact purely." So said Judge WOODS of this court in the case of *Alabama & Vicksburg R. R. Co. v. State,* 68 Miss. 657, and if it was, the jury should have been permitted to determine it. 13 Enc. of Pl. & Pr. 801; 24 Cyc. 129.

Should the legislature have the authority to say that railroads shall build a depot, etc., within the corporate limits of every incorporated city, town or village through which it passes, I deny that this conclusively fixes the duty upon the company to do so regardless of the public necessity and the railroad company's interest.

The effect of such a statute, if given any, is that it becomes the *prima facie* duty of the company to build and maintain a station in such city, town or village, in accordance with the idea that the fact of it being a city, town or village furnishes *prima facie* evidence of there being sufficient population and business to make the order reasonable, but the railroad still has the right to be heard in court as to the reasonableness of the statute in any particular case. In other words, it is not forever concluded by the act of the legislature. *Minn. & St. L. R. Co. v. Minnesota,* 193 U. S. 53. If it was, the statute would be clearly unconstitutional, because the legislature can not create a cause of action which would not otherwise exist, by declaring the existence of a presumed fact to be conclusive. If it could, the rights of all people would be within the absolute control of the legislature, and we know such is not the case.

The second paragraph of Code 1906, § 4854, which requires

that every railroad shall build and maintain a depot in every incorporated village through which said railroad passes, is either a conclusion of the legislature that the public convenience requires a depot in every incorporated village, or it is a conclusion of the legislature that the public convenience might not require it as a matter of fact, and so the legislature would predetermine and so declare it as a matter of law. In any event it is an effort of the legislature to cut off the railroad company from the right to have the question judicially investigated.

It is well settled that the legislative exercise of the police power, including the regulation and control of railroads and other public service corporations, must be reasonable; and whether or not such legislation is reasonable is a question for the courts to determine, and not, as was decided by the supreme court of the United States in the case of *Munn v. State of Illinois,* 94 U. S. 133, for the people at the polls. *State v. Farmers' Loan & Trust Co.,* 116 U. S. 307; *Reagon v. Farmers' Loan & Trust Co.,* 154 U. S. 362-413; *Smith v. Amos,* 149 U. S. 465; *Lake Shore & M. S. R. R. Co. v. Smith,* 173 U. S. 859; *Wis. N. & P. R. Co. v. Jacobson,* 179 U. S. 288; *Atlantic Coast Line v. North Carolina,* 206 U. S. 1; *Raymond v. Chicago U. T. Co.,* 207 U. S. 20; Tiedeman, State and Federal Control of Persons and Property, vol. 2, section 987.

Effective judicial limitation of the police power would be impossible, if the legislature was the sole judge of the measure it enacted. The only question the courts could then ask in dealing with police legislation would be: Does a condition exist which requires any legislative action? But the maintenance of private rights under the requirement of the public welfare is a question of proportionateness of measures entirely. Liberty and property yield to the police power, but not to the point of destruction. Therefore the duty to reasonably exercise the police power is a constitutional limitation upon the legislature.

From their management of the case it is quite evident that counsel for the state had grave doubts regarding the reasonable-

ness and the constitutionality of the statute for they were not content to rest their case upon proof that Derma was an incorporated village and that the railroad passed through it, and from these facts alone was entitled to a depot; but in addition they proceeded to introduce testimony to show that public convenience demanded a depot at Derma.   Counter to this the defendants introduced proof to the effect that the public convenience did not require a station there nor did the interests of the company; and so the requirement of the statute that the railroad company should build and maintain a depot within the incorporation of the village of Derma, because it was an incorporated village, was an unreasonable regulation and deprived the company of its property without due process of law, and did not give it the equal protection of the law in that it denied it the opportunity to earn a reasonable per cent in its investment.

After the proof was all in the court withdrew the disputed facts from the jury and gave a peremptory instruction for the state, on the idea, we assume, that the legislative requirement was a reasonable one or that the facts were beyond doubt that the public convenience required the company to build a station at Derma.   In this regard, the court below, we submit, erred.

The proof is overwhelming that the revenue from a station at Derma would not be self-sustaining, that it would not be sufficient to support the expense of maintaining that station, much less to yield a reasonable per cent on the amount expended in building the same; and so, it being a fact that the station at Derma would not be self-sustaining, it would be an unreasonable requirement to make the company build and maintain a station house there at a loss.   *Telegraph Company v. Railroad Commission,* 74 Miss. 80 ; *Reagon v. Farmers' Loan & Trust Co.,* 154 U. S. 362.

In the case of the *Atlantic Coast Line v. North Carolina,* 206 U. S. 1, Mr. Justice WHITE, in delivering the opinion of the court said, in substance and by intimation, that if the whole line is not paying after allowing for any loss resulting from a

compliance with this order, it would be an unreasonable requirement.

Applying the law to the facts in this case, where the proof is overwhelming that this entire line of railroad is being operated at a loss of from $25,000 to $30,000 per year, and that there is no immediate prospect for an increase in its business or a decrease in the cost of its maintenance and operation sufficient to reasonably expect a reasonable return on the money invested in its construction, we must conclude that the statute is unreasonable as applied to this case, being a deprivation of the company's property without due process of law, and that it will not be enforced.

As to the other feature of this case, that the public convenience requires it, we take it that this does not mean that because the inhabitants of this small village of Derma demand greater facilities than they now have, that this is conclusive of the reasonableness of their demand for something more; for if this were the fact every community along the line of a railroad would require the company to stop its train in their community, to load and unload freight, to receive and discharge passengers, to build and maintain a depot. We say that every community would demand such of the railroad company, because every community of one hundred souls can become incorporated, under the laws of Mississippi, and so the public convenience so far as this community would be concerned would require the railroad company to comply with this demand. Consequently such is not the meaning of this legislation, and such is not the interpretation put upon "the public convenience" by the courts. *Atlantic Coast Line v. Wharton,* 207 U. S. 328.

The appellant established by a preponderance of the testimony that there was no public necessity for the maintenance of a depot at Derma.

The land in that immediate community is wild and uncultivated, and extremely sparsely settled. There is already a flag station at Derma where people can get on and off the cars, can

receive and receipt for their freight, and which otherwise furnishes them all the convenience of a station without the expense of building and maintaining one, with an agent, operator, etc., which would be largely in excess of and out of proportion to, the revenue which could possibly accrue from the business at that point. In other words, that a station at that place would be operated at an annual loss to the company.

The proof shows that there is already a station with agent, operator, etc., at Calhoun City, only one and one-half miles west of Derma; and that this station, though handling practically all the business which would be divided between it and another station at Derma, is not self-sustaining. It was also shown that there is a flag station at Derma, and at Hollis' Switch, three and one-half or four miles east of Derma; and an established station with an agent, operator, etc., at Vardaman, six and one-half miles east of Derma, all reasonably accessible to Derma. This conclusively establishes the contention of the railroad company that the public convenience did not require the building and maintenance of a depot at Derma.

The people of Derma have practically the same shipping facilities that some of the people of Jackson have, and better than many people in the large cities have. And as this court well said in the *Lexington case,* in substance: If the railroad commission were to require the railroads to build and maintain a station whenever and wherever the immediate community demands it, the city of Chicago would have many stations, because it is miles from the Union Station in that city, as in St. Louis, and many other cities, to the different business interests of the city. Of course the community wanting the station would be benefited and convenienced by having the depot built just where they want it, but the question is: Does the public convenience demand it? In the case at bar, will the interest of the people of Calhoun county and of Chickasaw county, through which counties this railroad runs, be served by the establishment and maintenance of a depot at Derma any better than it is now served?

On the contrary, will not the people receive of necessity poorer service generally? For certainly, when the railroad company is doing all it can to serve the public and is not making expenses, a court of justice will not say: You must do more, whether you are able to or not, because a small community demands it and will be benefited by it, and benefited only in this way, that the land values would possibly be appreciated.

Because of the fact that Derma is a "flag stop," the people of Derma and the public generally, can get on and off the train there now as well as they could if they had a station house and agent there; can receive and ship their freight with equal facility, with the one exception that they have to go to Calhoun City or Vardaman and there obtain a bill-of-lading, and this is very little further than some of the business men of Jackson have to go, and in addition the Jackson men, as a rule, have to haul their freight further to get it to and from the cars.

We therefore say, it is an unreasonable requirement, as the public convenience does not demand it.

In conclusion, it is respectfully submitted that the Mississippi railroad commission cannot order a depot built and designate the site thereof before the railway company has made a selection which is inconvenient or inaccessible. It is further submitted that the Mississippi legislature cannot arbitrarily say that a railway company shall build and maintain a depot in every incorporated village through which it passes, regardless of the public convenience and the interest of the railway company.

*E. L. Russel* and *Mayes & Longstreet,* on the same side.

*J. L. Bates; Creekmore & Stone* and *R. V. Fletcher,* for appellee.

[The briefs of all the counsel in this case except Mr. Stovall's were absent from the record when it reached the reporter and could not be obtained by him; hence no synopsis of them is given.]

MAYES, J., delivered the opinion of the court.

Section 4854 of the Code of 1906 provides that: "Every railroad shall establish and maintain such depots as shall be reasonably necessary for the public convenience, and shall stop such of the passenger and freight trains at any depot as the business and public convenience shall require. And every railroad shall establish and maintain a depot within the corporate limits of every incorporated city, town or village through which said railroad passes; and the commission may cause all passenger trains to permit passengers to get on and off in a city at any place other than at the depot, where it is for the convenience of the traveling public. And it shall be unlawful for any railroad to abolish or disuse any depot when once established, or to fail to keep up the same and to regularly stop the trains thereat, without the consent of the commission."

The Southern Railway Company in Mississippi is a corporation organized and operating a railway under the laws of the state of Mississippi, and, in addition to many more miles of railway owned and operated by it in the state, it has constructed and owns and operates a short branch road extending from Okolona, in Chickasaw county, to Calhoun City, in Calhoun county, and through the incorporated village of Derma, also in Calhoun county, Miss. This branch line of railway lies wholly within the state and is operated between the two points named. The village of Derma had a population of about three hundred people, and some time in January, 1907, the residents petitioned the railroad commission to require the Southern Railway Company to stop its trains at Derma and to erect a suitable and adequate depot in the village. After hearing the petition the commission ordered the trains stopped and a depot to be built. The order of the commission was totally disregarded in so far as the building of the depot was concerned. After the railway company refused to build the depot, and in May, 1907, the attorney-general, on behalf of the state and proceeding under section 4854 of the Code of 1906, filed a mandamus petition, praying that the rail-

way company be commanded and directed to erect and maintain a depot in the village of Derma, in conformity with the order of the commission and the provision of the statute, and further praying that the company be required to construct and maintain all necessary switches and side tracks in the village of Derma, etc. While the petition seems to be predicted of the order of the commission, as well as the statute, we treat this proceeding as entirely under the statute, and ignore it in so far as it deals with the order of the commission.

This petition was demurred to by the railway company. The demurrer was overruled, whereupon an answer was filed. The main feature of the answer addressed itself to the constitutionality of the statute in question, and alleged that the statute was void under section 14 of the Constitution of 1890 of the state and the fourteenth amendment of the Constitution of the United States, in that in this case it deprives the railway company of its property without due process of law, and further denies the railway company the equal protection of the law. The answer further claims that this branch road has never earned, does not now earn, or give promise of earning enough to pay its operating expenses, including the expense of maintenance and taxes. These are the substantial questions raised by the answer. On the issue thus made much testimony was taken, the purport of which is that this branch line, on which is located the village of Derma, and which constitutes but a small part of the system owned and operated by the Southern Railway Company in the state, is being operated at a loss; but the testimony fails to show that the entire system operated and owned within the state is not being operated at a profit. All the testimony in behalf of the railway is addressed to this branch line alone. After the testimony was all in, the court gave a peremptory instruction to the jury to find for the plaintiff, whereupon a judgment was entered by the court, ordering the Southern Railway to commence within thirty days from the date of the judgment to erect a depot and such necessary switches and side tracks within the corporate

limits of Derma as would furnish ample and sufficient accommodation for the needs and demands of the town. The court does not undertake to fix the cost of this depot in any way, but merely requires the erection of such depot and necessary switches and side tracks as will furnish sufficient accommodation for the needs of the town. It was further ordered that the work should be completed within ninety days. No complaint is made here that the time allowed for the erection of these buildings and switches is not sufficient, and it will be observed that the judgment taken by the court was in accordance with the statute, and not the order of the railroad commission. From this judgment an appeal is prosecuted here.

.We can see no question in this case which should have been submitted to a jury. The statute requires the railroad to do just what the court said it shall do. All the testimony tending to show that the railroad is being operated at a loss is confined to only this branch of the road, and not to the whole system operated in the state. One of the witnesses for the railroad company states that no branch line ever pays, nor does the railroad company expect it to pay. Its use is simply tributary to the main system. Under the facts of this case there is nothing making the operation of this statute unconstitutional in any respect, either as violating any provision of the Constitution of the state or the United States. This statute is enacted under the police power of the state. Its purpose is to protect the people of the state, located in villages and towns, from any sort of discrimination at the hands of public carriers. It is intended to compel all railways to provide suitable facilities for the conduct of their business within incorporated villages. When action is sought to be taken under this statute in a case where the facts show that the whole system of railway owned and operated within the state is operated at a loss, we will then decide that case; but the case as made by this record is not such a one. On the questions involved in this case the cases of *Atlantic Coast Line R. R. v. North Carolina Commission*, 206 U. S.

1, 27 Sup. Ct. 585, 51 L. Ed. 933; *Gladson v. State of Minnesota,* 166 U. S. 427, 17 Sup. Ct. 627, 41 L. Ed. 1064, and *Wisconsin, M. & P. Ry. Co. v. Jacobson,* 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194, will be found very helpful.

*Affirmed.*