818 NEBRASKA REPORTS. [Vol. 85

Chicago, R. I. & P. R. Co. v. Nebraska State Railway Commission.

CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLANT, V. NEBRASKA STATE RAILWAY COMMISSION ET AL., APPELLEES.

FILED JANUARY 20, 1910. No. 16,399.

1. **State Railway Commission: RULINGS: APPEAL: BURDEN OF PROOF.** The legislature has authority to provide, in appeals from orders of the state railway commission, that the burden of proof should rest upon the party seeking to set aside the decision of the commissioners to show by clear and satisfactory evidence that the order is unreasonable and unjust, and that the record should be *prima facie* evidence that the order is just and reasonable.

2. ———: ———: ———: **EVIDENCE.** In such a case the evidence must outweigh that offered by the defendant, and it must be of the same clear and satisfactory nature as that required in other cases where presumptions of validity attach to the instrument sought to be set aside, or to the transaction sought to be declared void.

3. ———: ———: ———: **COST OF IMPROVEMENT.** The cost of a proposed improvement ordered by such commission is not in all cases a proper test for determining the reasonableness of such an order. It is proper to be taken into consideration, but is not controlling.

4. ———: ———: ———: **INCOME ON INVESTMENT.** The mere fact that the income from the expenditure at a particular point upon its line may not earn a fair return upon the capital invested at that point can only be considered in connection with the revenue from the entire operation of the road within the state at least.

5. ———: ———: ———: **DISMISSAL.** In such an appeal from an order to establish a station, the whole demand for both freight and passenger service must be considered, and if, taking all the circumstances into consideration, the order is not unreasonable, the appeal will be dismissed.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*M. A. Low, E. P. Holmes, G. L. De Lacy* and *P. E. Walker,* for appellant.

*William T. Thompson, Attorney General, Grant G. Martin* and *L. E. Gruver, contra.*

LETTON, J.

This is an appeal from a judgment of the district court refusing to set aside an order of the state board of railway commissioners. On August 23, 1907, a complaint was filed before the state board of railway commissioners by J. A. Beal and others against the Chicago, Rock Island & Pacific Railway Company. The substance of the complaint is that the complainants are residents and citizens of University Place, Nebraska, a city of upwards of 4,000 inhabitants, and are doing business therein; that the tracks of the defendant extend into and through said city, but that defendant has no depot or station house therein for the accommodation of passengers or for the receipt or delivery of freight; that several thousand students attend the educational institutions in said city each year; that there is a large amount of passenger traffic on this account, and that people are obliged to leave and take trains at Lincoln, and are subjected to great trouble and annoyance in getting local transportation for themselves and baggage to and from University Place. It is also alleged that there is a very large amount of freight business done to supply the needs of the population, and that this in itself is sufficient to require a depot on the line of defendant's railroad in said city. The prayer is that an order be made requiring the defendant to erect at a convenient place in said city a passenger and freight depot, to provide an agent, sidetracks and other things necessary for the proper use of such depot by the patrons of the defendant company, and for general relief.

The defendant answered, denying any jurisdiction in the railway commission. It further answered to the merits, alleging that University Place lies between Lincoln and Havelock, which are four miles apart; that the street car and transportation facilities are such that it is easier to reach Lincoln from the center of University Place than a station at any place that could be established in University Place; that it has recently constructed at a

great expense a switch some two or more miles in length
from Lincoln to the center of the business district of Uni-
versity Place, and thereby has satisfactorily handled
freight business to that point over its line; that passen-
ger traffic arising from students does not come from the
line of defendant, which has only a short line in Nebraska,
so that only a small part of such traffic would come over
its lines; that it is willing to furnish additional facilities
as fast as the returns on business will justify; that the
returns from the business in University Place, which are
small, would be not greatly increased; that the expense
of acquiring and constructing a station would be at least
$5,000, and that "the compelling of the construction by
the defendant of the transportation facilities prayed for
in the petition would amount to a confiscation of its prop-
erty to the extent named,   *   *   *   and would be unreason-
able, unjust, and unfair in law and in fact."

A hearing was had by the state railway commission
upon the issues thus raised, and, after being argued and
submitted, the commission ordered that the defendant
"be and the same is hereby notified and directed to erect,
on or before the 1st day of July, 1908, and thereafter
maintain on its road at or near a point in University
Place, Nebraska, where it intersects or touches Warren
avenue, a suitable station and freight house with a floor
space of not less than 500 square feet, together with the
necessary switch tracks and appurtenances thereto." The
order further directed that an agent be provided, and
schedules of rates and charges be published and put into
effect. Afterwards, the railway company being dissatis-
fied with this order, filed a petition in the district court
for Lancaster county on appeal, setting forth the particu-
lar causes of objection to the order. A large part of the
petition is devoted to setting forth constitutional objec-
tions to the statute authorizing the creation of the com-
mission, and the proceedings of which complaint is made.
The further objections are made that the matter concerns
interstate commerce, and that the order is, therefore, be-

yond the powers of the commission; that the complaint does not state facts sufficient to entitle the complainants to relief; that the allegations are not established by the evidence; and it is further contended that the order is unreasonable because no necessity exists for the establishment of a station at University Place. The petition prays that the order of the railway commission be vacated, and that it be enjoined from ordering the railway company to establish such station. The railway commission answered, setting forth at length the proceedings and findings of fact upon which the order was based, alleged that the facts so found are the facts in relation to the matter, and further alleged that the railway company is a common carrier engaged in intrastate transportation of both passengers and freight for hire in the state of Nebraska.

The findings as to matters of fact, so far as material here, are as follows:

"From the evidence it appears, and the commission so finds, that University Place is an incorporated town, having a population between twenty-five hundred and thirty-five hundred inhabitants; that a university enrolling several hundred students is located within its limits.

"That there is a considerable number of merchants maintaining business houses in said city, engaged in the business of shipping, buying and selling drugs, groceries, hardware, lumber, coal, general merchandise, plumbing and building supplies.

"That the main line of the defendant company passes through the northern portion of the town at a distance of about three-fourths of a mile from the center of town.

"That the nearest stations on the defendant's road, or any other steam railroad, are located at Lincoln, and Havelock, each at a distance from the center of University Place of about four miles and one and three-quarter miles, respectively.

"That the defendant company has constructed a switch track from its main line for a distance of about two miles to a point near the center of the city; that car-load freight

alone to the extent of several hundred cars a year is delivered on said switch track; that, except where competition enters into the service, a switching charge of $5 a car is added to the regular tariff rate to Lincoln, on all car-load shipments delivered on said switch track; that no 'less than car-load' shipments are received on said switch track; and that the citizens of said city are compelled to either go to Lincoln or Havelock for such shipments, thereby causing them more or less inconvenience, and entailing considerable and unnecessary extra expense and loss of time. * * *

"Furthermore, it is the opinion of this commission that the entire business of the railroad done at University Place will not only pay expenses, but indeed return a fair profit to the defendant. * * *

"We do not concur in the conclusions of counsel for defendant that the transportation facilities afforded the complainant and his fellow citizens in University Place are sufficient to satisfactorily and reasonably supply the public need."

A trial was had before the district court upon the issues thus raised, and the court found as its conclusion of fact: "That the decision of the commission appealed from is not unreasonable or unjust within the meaning of the law providing for appeals, and that appellant is not entitled to relief prayed for." The court further found, as a matter of law, that the only question for it to determine upon the appeal was "whether the order of the commission is unreasonable or unjust, and, if the order is found to be such that reasonable men might differ as to its correctness, it cannot be said to be unreasonable; in other words, that the court is not empowered to put itself in the place of the commission with power to substitute its own judgment of what is reasonable and just for the judgment of the commissioners," and dismissed the appeal at the appellant's cost. Between 20 and 30 witnesses were examined at the trial. On the part of the appellant, they were principally employees of the railway

company, and dealers in lumber, coal and building material, receiving freight mainly in car-load lots, and whose places of business were situated on or near the switch belonging to the railway company, which extends from Lincoln to University Place, a distance of over two miles. On the part of the appellees, the witnesses were mainly retail merchants in the village, and private individuals residing therein. It is unnecessary to set forth the evidence at length. It supports the findings of fact made by the railway commission hereinbefore set forth. It further tends to prove that the establishment of the station would be of considerable benefit and accommodation to persons engaged in the retail business in University Place on account of the fact that, as matters now are, freight in smaller lots than 6,000 pounds, or less than car-load lots, is not delivered upon the switch by the railway company, but can only be delivered at Lincoln or Havelock, and from either of these points must be delivered to University Place either by means of the Morris Transportation Company, a company operating a freight and express business over the lines of the Lincoln Traction Company (which is a street railway corporation, whose lines connect Lincoln and Havelock, via University Place), or by being hauled by drays from the respective railway stations to the point of delivery. It is also shown that passengers arriving or departing from local trains could save much time if there was a station house at or near Warren avenue, the point where the station was ordered to be erected. On the other hand, the appellant's evidence tends to show that the cost of drayage from the proposed station to the stores in the village would be but little, if any, less than is now charged for delivery from Havelock or Lincoln. It is also shown that the station at Havelock is less than a mile farther from the business center of University Place than the site of the proposed station, which is nearly ¾ of a mile from such center as it now is. It is 4½ miles by street railway from the Chicago, Rock Island & Pacific passenger station in Lincoln to Univers-

ity Place, with fifteen-minute street car service. From the center of the business portion of University Place to the station of the company in Havelock is 1½ miles. This station is also reached by the street car lines with thirty-minute service from University Place to Havelock. At present there are no sidewalks from the business portion of University Place to the proposed site, and there are no houses within a few blocks. The testimony of the appellant's witnesses is to the effect that the cost of erecting the station, building house track and passing track, wells, stock-yards, scales, etc., would amount to nearly $18,000, and the annual maintenance cost would be nearly $5,000. It is also shown that, if the station is placed directly at the intersection of Warren avenue and the railway track, it will be in a low and wet situation, at a point where the track is curved, and it will be necessary to place the station on the outside of the curve, which will be on the side of the track farthest from the town. The merchants engaged in business involving heavy articles, such as lumber, cement, coal, etc., testify that a station is unnecessary, while the retail dealers testify that they could transact business at much less expense and receive goods more expeditiously if they could use their delivery wagons to bring goods from a station in University Place. They also testify that a local market for farm products would be built up.

The statue governing the powers of the court on this appeal is as follows: "If any railway company, common carrier, or person or persons affected thereby, shall be dissatisfied * * * with the decision of said commission with reference to any * * * order, act or regulation made or adopted by them, * * * such dissatisfied railway company, common carrier, person or persons, may file a petition, setting forth the particular cause or causes of objection to such decision, * * * or order, * * * in the district court of the county where the cause of action arose in this state, sitting as a court of equity, against said commission as defendant. * * * In all

trials under the foregoing article, the burden of proof shall rest upon the plaintiff, who must show by clear and satisfactory evidence that the * * * orders * * * complained of are unreasonable and unjust to it or them, and the record of the decision upon said hearing before said commission, shall, when properly authenticated by said commission, be received in evidence in the trial of said cause, that said * * * order * * * is *prima facie* just and reasonable." Ann. St. 1907, sec. 10655; laws 1907, ch. 90, sec. 7. We are of the opinion that it was entirely competent for the legislature to provide that the burden of proof should rest upon the party seeking to set aside the decision of the commissioners to show by clear and satisfactory evidence that the order is unreasonable and unjust, and that the record should be *prima facie* evidence that the order is just and reasonable. It will be seen that this provision of the statute applies not only to orders or regulations made against the contentions of the railway companies or common carriers, but as well when the relief prayed for by those complaining of the carriers is by the order of the commission denied, so that there is nothing unfair or unjust to the railway companies or discriminatory against them in this provision. The party, whether complainant or defendant, against whose contention the decision of the railway commission is made has the laboring oar in the district court, regardless of whether it is a private individual or a railroad company complaining. In an ordinary action appealed to this court in which there has been a trial to a jury, it is incumbent upon the party assailing the verdict upon the ground that there is not sufficient evidence to sustain it to assume affirmatively the burden of pointing out this fact, and the established rule in such cases is that, where the evidence is conflicting, the verdict of the jury will not be disturbed if there is sufficient competent testimony to uphold it. The question in such a case is not, did the jurors draw the correct conclusions from the evidence before them? Did they give credit to witnesses

who were unworthy of credit, and disbelieve other witnesses whose evidence was more reliable, thereby reaching an erroneous conclusion?—but, was there sufficient evidence before them from which, if they believed it, the conclusion might be drawn? And so in the present case the question is not whether this court or the district court might, if the question were originally before it for its determination, make the same order as made by the railway commission, but whether the evidence before the district court shows "clearly and satisfactorily" that the order was unreasonable and unjust.

The quantum of proof required to establish the fact that the order of the commission is unreasonable is more than a mere preponderance as in an ordinary case. The evidence must outweigh that offered by the defendant, and it must be of the same clear and satisfactory nature as that required in other cases where presumptions of validity attach to the instrument sought to be set aside, or to the transaction sought to be declared void. *Bingaman v. Bingaman, ante,* p. 248; *Peterson v. Estate of Bauer,* 76 Neb. 652, 661; *Doane v. Dunham,* 64 Neb. 135; *Topping v. Jeanette,* 64 Neb. 834; *Williams v. Miles,* 68 Neb. 463, 479, 62 L. R. A. 383, 110 Am. St. Rep. 431.

In *Minneapolis, St. P. & S. St. M. R. Co. v. Railroad Commission,* 136 Wis. 146, the facts were that the Wisconsin railway commission, after a complaint and hearing, ordered the railway company to erect a platform and stop its local passenger trains at a certain point midway between two stations which were between seven and eight miles apart. On appeal to the circuit court, that court found that the order of the commission was not unreasonable and refused to vacate it. In an elaborate and learned opinion (after argument and submission and reargument) the power of the legislature to confer upon the courts authority to review the reasonableness of rules or orders of the railway commission, the scope of such review, and the true construction of the word "unreasonable" in the language of the act were fully considered. It

may be said here that the language of our statute in this respect is substantially identical with that of the Wisconsin statute. The court said: "If this court or the circuit court were by the statute in question authorized to investigate the subject anew, to put itself in the place of the commission and search for this reasonable and just rate, with power to substitute its own judgment of what is reasonable and just for the judgment of the commissioners, the statute might be subject to grave criticism. But the courts are not by this statute so authorized. The authority given to the circuit court is not to search for or disclose or declare this 'reasonable and just' rate or service, but merely to determine whether the order of the commission is 'unreasonable'—quite a different thing. * * * Unless the plaintiff is able to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable, as the case may be, the order must stand. The words 'clear and satisfactory evidence' are significant, because at the time of the enactment of this statute they were used in the law of this state to describe a degree of proof greater than a preponderance of evidence, and such as was necessary in order to establish fraud by that party to an action upon whom the burden of proof rested. * * * We must hold that in the statute before the court the legislature used the words 'clear and satisfactory' in this sense, and intended they should describe that degree of proof necessary to establish fraud or prove mistake in a written instrument." A similar conclusion was reached by the supreme court of Oklahoma in *Atchison, T. & S. F. R. Co. v. State,* 100 Pac. (Okla.) 16, and in *Atchison, T. & S. F. R. Co. v. State,* 101 Pac. (Okla.) 262, and by the supreme court of Louisiana in *Morgan's L. & T. R. & S. S. Co. v. Railroad Commission,* 109 La. 247.

Before the creation of the railway commission the courts of this state exerted the authority to require railway companies by mandamus to provide necessary facilities for the public. *State v. Republican Valley R. Co.,* 17

Neb. 647, 18 Neb. 512. But, unless public necessity requires, the discretion of the railroad company in establishing and maintaining its stations should not be interfered with. *Chicago & N. W. R. Co. v. State,* 74 Neb. 77. In *Chicago & A. R. Co. v. People,* 152 Ill. 230, a mandamus was sought to compel the railway company to establish a station at Upper Alton, which was refused. The facts are fully set forth in the opinion. In the case in this court first above referred to, a mandamus was issued to compel the Republican Valley Railroad Company to establish a station at Blue Springs, a town of about 1,500 people, at a point outside of the corporate limits of Blue Springs, and about a mile and a half from another station at the town of Wymore. Considering the facts in the Nebraska case, and comparing them with those in the Illinois case, we think the comparison clearly demonstrates that what might be considered just and reasonable and necessary by one court may be considered unjust and unreasonable by another. If the order to establish a station at Blue Springs under the circumstances at the time and place was just and reasonable to provide necessary facilities for the public, then we are convinced that the order establishing a station at University Place falls within that category.

The railroad company insists that the cost of constructing a station and necessary side-tracks, etc., would much exceed the pecuniary benefit derived by it from such establishment, would not justify the outlay, and would be to that extent confiscatory. The cost of the proposed improvement is not in all cases a proper test for determining the reasonableness of such an order. It is proper to be taken into consideration, but it is not controlling. It is not contended that the amount to be expended is so excessive that it will diminish the company's revenues, relatively, to any great extent. The mere fact that the income from the expenditure at that particular point upon its line may not earn a fair return upon the capital invested at that point can only be con-

sidered in connection with the revenue from the entire operation of the road within the state, at least. As said by Mr. Justice White in his opinion in *Atlantic Coast Line R. Co. v. North Carolina Corporation Commission,* 206 U. S. 1, 26: "It follows, therefore, that the mere incurring of a loss from the performance of such a duty does not in and of itself necessarily give rise to the conclusion of unreasonableness, as would be the case where the whole scheme of rates was unreasonable under the doctrine of *Smyth v. Ames,* 169 U. S. 466, or under the concessions made in the two propositions we have stated. Of course, the fact that the furnishing of a necessary facility ordered may occasion an incidental pecuniary loss is an important criterion to be taken into view in determining the reasonableness of the order, but it is not the only one. As the duty to furnish necessary facilities is coterminous with the powers of the corporation, the obligation to discharge that duty must be considered in connection with the nature and productiveness of the corporate business as a whole, the character of the services required, and the public need for its performance." See, also, *Wisconsin, M. & P. R. Co. v. Jacobson,* 179 U. S. 287; *Morgan's L. & T. R. & S. S. Co. v. Railroad Commission, supra.*

It is also objected that the place designated for the erection of the station is upon a curve and at a point where the track is elevated and the land is low and wet. The order, however, does not require the erection of the station exactly at the intersection of Warren avenue. It will be a sufficient compliance if it is placed at a point as near as possible to Warren avenue, consistent with the safe, necessary and proper operation of the railway, and having regard to public convenience, and the order of the commission.

Upon the whole case, the evidence convinces us that the principal ground for complaint is the lack of facilities for the reception and sending out of freight in less than carload lots, and that it is open to question whether the

necessity of a station at the point designated for the accommodation of passenger traffic alone would be enough to justify the commission in making the order. The street car facilities from University Place to the Havelock and Lincoln stations of the railway company, and the means of delivery of personal baggage, are perhaps as convenient for passengers as from many points within the corporate limits of the city of Lincoln. However, it is not the inconvenience to passengers alone, but the whole demand for both freight and passenger service that must be considered, and if, taking all the circumstances into consideration, the order is not unreasonable, we have no power to set it aside.

Under all the facts in evidence, and giving the statutory presumption proper weight, we are satisfied that the order of the commission is not unreasonable, and the judgment of the district court so finding is

AFFIRMED.