ILLINOIS CENT. R. Co. *v.* MISSISSIPPI RAILROAD COMMIS-
SION.

[77 South. 314, In Banc.]

1. CARRIERS. *Carriage of passengers without tickets. Excessive fares.
Code* 1906, *Sections* 4842-4843.

   Where the railroad commission, acting under authority given
   by Code 1906, sections 4842-4843, fixed a maximum rate that
   may be collected from passengers boarding trains at stations
   where tickets are on sale, carriers may yet require a higher
   rate from passengers not having secured tickets than from
   those who have, but cannot collect more than the maximum rate
   fixed by the commission.

2. CARRIERS. *Railroad commission. Reasonableness of order fixing
   fares. Code* 1906, *Section* 4055.

   Code 1906, section 4055, making it unlawful for railroads to col-
   lect more than the regular fare from passengers who board
   trains at places where tickets are not offered for sale was not
   intended to control the railroad commission in fixing maximum
   rates, and an order by the commission, making the maximum
   ticket rate and the maximum train rate each at three cents a
   mile, is not unreasonable and void.

APPEAL from the chancery court of Hinds county.

HON. O. B. TAYLOR, Chancellor.

Suit by the Illinois Central Railroad Company and
the Yazoo & Mississippi Valley Railroad Company
against the Mississippi Railroad Commission. From de-
crees dismissing each bill, plaintiffs appeal.

The facts are fully stated in the opinion of the court.

*Chas. N. Burch, H. D. Minor, R. V. Fletcher* and *May-
es, Wells, May & Sanders,* for appellant.

*Ross A. Collins,* Attorney-General, and *Earl N. Floyd,*
Assistant Attorney-General, for appellee.

STEVENS, J, delivered the opinion of the court.

Two cases are presented by the one record. Appellants, the Illinois Central Railroad Company and the Yazoo & Mississippi Valley Railroad Company, each filed its bill of complaint against the Mississippi Railroad Commission to enjoin the enforcement of penalties for violation of an order of the Commission. In 1907 the Railroad Commission passed an order, prohibiting all railroads from charging passengers who boarded trains without tickets a fare in excess of three cents per mile. This order, it appears, was complied with by the carriers until about January 1, 1915, when appellants adopted a rule requiring each passenger who had an opportunity to buy a ticket and who had not provided a ticket to pay ten cents in excess of the regular fare of three cents per mile. In attempting to adopt this rule appellants filed with the Railroad Commission a new tariff, giving notice of its intention to charge the extra sum of ten cents and promulgating an order directing their passenger conductors to collect the excess rate in all proper cases. This tariff or rule of the company was not approved by the Commission, and, indeed, before it could be approved appellants had begun to enforce the rule. Upon hearing, the Commission declined to approve the extra charge of ten cents, and entered an order, directing that if the said charges were made after a given time the carriers would be fined five hundred dollars for each offense. In pursuance of this order of the Commission appellant Illinois Central Railroad Company was fined five hundred dollars and the bill seeks to restrain the collection of this fine and any other fines that might be imposed for the violation of the order in question. Appellant Yazoo & Mississippi Valley Railroad Company averred that it was the intention of the Commission to impose similar fines upon it, and seeks by its bill to enjoin the imposition and enforcement of all such fines. The manifest object of the bills is to test the right

of the Commission to impose these fines and to establish
the right of the carriers to enforce what they term a ten-
cent penalty. Their bills charge that this ten-cent penal-
ty is not a part of the regular fare required of passen-
gers, but is purely a penalty designed to enforce a regu-
lation of the company, requiring passengers to provide
themselves with tickets. The new tariff, under which
the penalty is being collected, was filed December 30,
1914, effective January 1, 1915. It will be noted, then,
that the carriers adopted their new tariff, and were en-
forcing the collection of this penalty without the express
approval of the Commission. The Commission had, in
December, 1902, fixed the maximum ticket rate at three
cents per mile and the maximum train rate at four cents
per mile. In February, 1907, the following order was
passed:

"It is ordered, that the former order of this Commis-
sion, authorizing railroad companies operating within
this state to collect through their conductors a rate of
four cents per mile from passengers boarding trains at
stations where tickets are on sale, who had opportunity
to purchase tickets and failed to do so, is hereby cancel-
ed, and that in lieu thereof a rate of three cents per mile
shall be collected. It is further ordered, that the mini-
mum amount to be collected from passengers shall be
ten cents."

Upon the filing of the bills temporary injunctions were
issued, general demurrers were thereafter filed by the
attorney-general to the bills, and decrees entered by
the trial court dismissing the bills. From these final de-
crees dismissing the bills, an appeal with *supersedeas*
was allowed by the chancellor. It further appears from
the bill of the Illinois Central Railroad Company that
the passenger who was required to pay the ten-cent pen-
alty on January 1, 1915, for which the five hundred dol-
lar fine was imposed by the Commission, had an oppor-
tunity to buy a ticket before the passenger boarded the
train.

It is the contention of appellants that the rule of the company imposing a ten-cent penalty on all passengers who have not purchased tickets, regardless of their destination or the length of their journey, is a reasonable regulation, and that the order of the Commission passed February 19, 1907, is unreasonable and void. There is a further contention that if the extra ten cents is to be regarded as a part of the regular fare and not a penalty, the complainant carriers complied with the statute providing how their tariffs shall be made and published, and that they had the right to alter this tariff subject to review by the Commission on proper hearing. The bills also aver that when the complainants were cited by the Commission to show cause why they should not be punished, the complainants appeared with their attorneys and witnesses, and offered to show by evidence that the collection of the extra ten cents was a reasonable charge and a reasonable regulation; that the Commission declined to hear proof because of the admitted fact that the carriers were then enforcing the new tariff or rule, and the Commission declined to go into the facts while the carriers were in default and were violating the orders of the Commission, the necessary inference or deduction being that the Commision required a declaration on the part of the carriers that they would refrain from collecting the ten-cent penalty until the Commission approved or authorized the same by a new order spread upon its minutes.

Under our statutes, especially sections 4842 and 4843, the Railroad Commission is empowered to fix and revise rates to be charged passengers. The power of the state, through the Commission as a governmental agency, to supervise common carriers and fix the maximum charges for the transportation of passengers and freight is conceded. The method of regulating carriers by and through administrative bodies acting as governmental agencies is now almost universally adopted in all the states and by the national government. "As the proc-

ess of arriving at reasonable rates is a perplexing one, involving the exercise both of judicial functions in determining whether a given rate is under the circumstances reasonable, and of legislative functions in fixing the rate after such determination, it was early recognized that legislative assemblies could not give to such questions the required time to investigate and determine in advance the reasonableness and justness of the proposed rate or other requirement, necessitating, as such a question would, long and protracted hearings and intricate knowledge of such matters. For this reason the plan was devised . . . of creating Commissions . . . and the delegation to such bodies of administrative and legislative powers.'' 4 R. C. L., par. 93. When the Commission acts within the powers expressly delegated, its orders, when reasonable, speak with as much authority as a statute. The bills under review show upon their face that the Commission has exercised its delegated power in fixing the maximum train rate at three cents per mile. Any intimation that the rate is unreasonable or confiscatory has no bearing upon the issues here. No facts are under review. The capital employed by the carriers, their expenses, experiences in charging three cents per mile, profits, etc., are not under review. The primary question is whether appellants may collect a sum in excess of a rate fixed by the Commission, whether this excess be regarded as a penalty or as additional compensation for the inconvenience to which carriers are put in collecting fares on trains.

It may be conceded that under the common law carriers may adopt reasonable rules and regulations and indeed that appellants could adopt reasonable regulations to prevent passengers from boarding passenger trains without first providing themselves with tickets; but in doing this, ''the car rate can in no case exceed the maximum allowed the company by its charter or a statute fixing rates'' (25 Am. & Eng. Encl. of L. [2d Ed.] 1104), or by the order of the Commission acting

within the scope of its delegated authority. As well stated by Elliott on Railroads, vol. 4, par. 1603:

"The company may enact and enforce a rule or regulation requiring a reasonably higher rate of fare to be paid upon the train than the ticket rate, . . . but it cannot be fixed at such a sum that the fare collected on the train will exceed the maximum rate allowed by law."

"A rule of the carrier which requires that, when cash fare is paid, an extra amount shall be collected above the regular fare is not valid when the cash fare, together with the extra amount, exceed the maximum rate allowed by law." Footnote 28, section 1033, vol. 2, Hutchinson on Carriers (3d Ed.), and authorities there cited.

In *Zaglemyer* v. *Cincinnati, etc., R. R. Co.,* 102 Mich. 214, 60 N. W. 436, 47 Am. St. Rep. 514, it was held:

"That the company cannot impose, as a penalty for not purchasing a ticket, such a sum that the fare collected on the train, including such additional amount, shall exceed the maximum allowed by law"—citing *Railroad Co.* v. *Skillman,* 39 Ohio St. 444; *Chase* v. *N. Y. Central R. R. Co.,* 26 N. Y. 523.

The case quoted from was decided in 1894 and is one of the leading cases on the subject. The same result is reached, and the infliction of a penalty for violating the law was upheld, in *Hogan* v. *Long Island R. R. Co.,* 142 App. Div. 29, 126 N. Y. Supp. 449. The authorities indicate that this is the holding of practically all courts and commentators. The supreme court of Arkansas upheld a statute in terms very similar to the order of our Commission. *St. Louis & S. F. R. Co.* v. *Kilpatrick,* 67 Ark. 47, 54 S. W. 971.

It is insisted that the Commission has approved a maximum ticket rate of three cents per mile, and therefore the order fixing the maximum train rate at three cents per mile is upon its face unreasonable and void. We cannot yield to this suggestion. Our statutes devolve a delicate responsibility upon the Commission, and the decisions of such a tribunal should have the sympathetic

regard of the courts. The orders of the Commission
under review should not be striken down unless they
are clearly unreasonable or void. *Minn. St. P. & S. St.
M. R. Co.* v. *Railroad Commission,* 136 Wis. 146, 116 N.
W. 905, 17 L. R. A. (N. S.) 821; *Chicago, R. I. & P. R. R.
Co.,* v. *Nebraska Railroad Commission,* 85 Neb. 818, 124
N. W. 477, 26 L. R. A. (N. S.) 444; *I. C. R. Co.* v. *Inter-
state Commerce Commission,* 206 U. S. 441, 27 Sup. Ct.
700, 51 L. Ed. 1128.

It is further contended that section 4055, Code of 1906,
making it unlawful for a railroad company to collect
more than the regular fare from a passenger who boards a
train at a place at which the company does not offer
tickets for sale shows the policy of our state to authorize
a discrimination between ticket and train rates. When
this statute was enacted there was no order of the Com-
mission fixing the maximum train fare at three cents per
mile, but on the contrary, the order of the Commission
passed in 1902 authorized a four-cent train rate. The
statute relied on does not authorize the carrier to charge
any specified rate, and was not designed to control the
Commission in the exercise of its power to fix a maximum
charge per mile to be paid by passengers boarding the
train without tickets. The railroad companies are at
liberty to lower their ticket rates in such way as to dis-
criminate between ticket and train rates without violat-
ing the maximum prescribed by the Commission. The
right or power of the carriers to discriminate between
the ticket and train rates when the maximum charge does
not exceed the maximum fixed by the Commission is not
involved in the present cases. We are also not concern-
ed in the inquiry whether the ten-cent charge is a penalty
or additional compensation. If a fare, it exceeds the
lawful; if a penalty, its collection operates to require
of passengers money in excess of the maximum train
rate. Indeed railroad companies are not chartered for
the purpose of inflicting penalties, but to do service for
a patronizing public in return for a fair and reasonable

compensation.    No decision of our court is in conflict with the views herein expressed.    On the contrary, the proper limitation is indicated by our court in *Forsee* v. *A. G. S. R. R. Co.*, 63 Miss. 66, 56 Am. Rep. 801, as follows:

"It is competent for a railroad corporation to adopt reasonable rules for the conduct of its business, and to determine and fix, within the limits specified in its charter and existing laws, the fare to be paid by passengers transported on its trains."

This decision of our court was rendered before the creation of our Railroad Commission and prior to the adoption of the modern method of supervising carriers and their charges through a commission.

It follows that the demurrers to the bills were properly sustained, and the decrees appealed from must be affirmed.

*Affirmed.*