MAYOR AND ALDERMEN OF LOWELL *vs.* BOSTON AND MAINE RAILROAD & another.

SAME *vs.* SAME.

Middlesex.   March 15, 1921. — April 7, 1921.

Present: RUGG, C. J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Railroad,* Abolition of grade crossing.   *Grade Crossing.   Practice, Civil,* Recommittal of report and decision of grade crossing commissioners.

At the hearing by commissioners appointed under St. 1906, c. 463, Part I, §§ 29, 34, of a petition for the abolition of a grade crossing of a highway and a railroad, it was proper for the commissioners to receive and to give weight to evidence bearing upon the ability of the railroad corporation to respond to the financial burdens which would be cast upon it in the paying of its proportionate part of the expense of the abolishment of the crossing.

The rule above stated is not affected by St. 1914, c. 722, § 1. [1]

A denial of a motion to recommit a report and decision of commissioners appointed under St. 1906, c. 463, Part I, §§ 29, 34, is a proper exercise of judicial discretion where the report and decision were filed on August 19, 1915, and the motion was filed on the fourteenth day of the next month but the motion was not heard until late in 1920, when one of the three commissioners had died and a second had become a judge of the Superior Court.

Two PETITIONS, filed in the Superior Court respectively on October 26, 1909, and on January 26, 1910, for the appointment of commissioners relative to the abolition of grade crossings of the highway with the railroad at Middlesex Street and at Fletcher Street and Western Avenue in Lowell.

The proceedings in the Superior Court and material findings of the commissioners are described in the opinion. By order of *Lawton, J.,* decrees were entered denying motions to recommit the reports, awarding compensation to the commissioners for their services and dismissing the petitions. The petitioners appealed.

*W. D. Regan,* for the petitioners.

*R. A. Stewart,* (*C. O. Pengra* with him,) for the Boston and Maine Railroad.

*A. S. Hall,* for the Nashua and Lowell Railroad Corporation.

JENNEY, J. The mayor and aldermen of the city of Lowell present appeals from decrees entered in the Superior Court relating to the decisions of commissioners appointed in that court to decide whether the security and convenience of the public require the abolition of certain crossings at grade in that city, and further, if it is decided that such abolitions ought to be made, to prescribe the manner and limits thereof, to apportion the work and the payment of the actual cost of the alterations.

The petitions were filed on January 26, 1910, under St. 1906, c. 463, Part I, §§ 29 *et seq.* Commissioners, three in number, were appointed on December 29, 1913, and their reports were filed on August 19, 1915. Motions for recommittal were filed on September 14, 1915, in behalf of the petitioners. On September 23, 1920, the Boston and Maine Railroad and the Nashua and Lowell Railroad Corporation, parties respondent to the petitions, moved that the decision of the commissioners be confirmed, their compensation fixed and the petitions dismissed as to all other matters. After hearing, decrees were entered on October 7, 1920, denying the motions for recommittal, confirming the decisions

fixing the compensation of the commissioners, and otherwise dismissing the petitions.

One of these petitions relates to the abolition of the crossing at grade of Middlesex Street over the tracks of the Nashua and Lowell Railroad Corporation, the railroad of that corporation being operated by the Boston and Maine Railroad as lessee. From the commissioners' report the following facts appear: Middlesex Street is one of the main thoroughfares of Lowell, and the travelling public suffer much inconvenience in the use of the street owing to the obstructions caused by the passage of trains and by the close proximity of the crossing to the Lowell station of the railroad. The crossing is well guarded by gates and brakemen, and so far as appears no accident has occurred at it. Two of the commissioners also reported:

"The respondents offered evidence to show the financial condition of the Boston and Maine Railroad, but the petitioners objected to the admission of the evidence, on the ground that it was collateral and immaterial to the question presented; that the commissioners had not the right to consider the financial condition of the railroad in determining whether or not the security and convenience of the public required the crossing to be abolished. The commissioners, however, ruled otherwise, and admitted the evidence subject to the petitioners' objections, and on the evidence find:

"That the Boston and Maine Railroad has not earned its fixed charges for more than two years; that it has paid no dividends on its common stock since April, 1913; that it has a large floating indebtedness which it is unable at present to pay or provide for; that its credit is seriously impaired and that it has no available funds to provide for the cost of the abolition of the crossing in question."

"The commissioners are of the opinion that upon the facts and under all the circumstances it is not necessary for the security and convenience of the public that said crossing be abolished at the present time, and so find and report to the court. The commissioners were largely influenced in the conclusion to which they have come by the financial condition of the Boston and Maine Railroad."

The third commissioner reported that he could not "concur with the majority of the commission in the admission of evidence

as to the financial condition of the respondent Boston and Maine Railroad. If, however, it shall be determined by the court that this evidence was properly admitted, I concur with my associates in the conclusion reached by them. With this exception, I concur with the report."

The other petition is for the abolition of crossings at grade of said railroad corporation at Fletcher Street and Western Avenue in Lowell. As to these, two of the commissioners reported: Western Avenue is largely used for the handling of freight. "It is forty-five feet wide and is crossed at grade by two main tracks and two or more switch or side tracks on which cars are switched to the freight yard or down across Fletcher Street. . . . Fletcher Street into which Western Avenue runs is about forty-two feet wide, has two tracks across it at grade near its over junction with Dutton Street and one electric car on the surface over which many electric cars pass.

"The Fletcher Street crossing is used for freight purposes only, and there is much shifting and passing of cars over it, although so far as practical, most of the shifting is done at night so as not to interfere with travel. There is, however, a good deal of congestion of travel at these crossings, particularly at the Fletcher Street crossing, and much delay and inconvenience to travellers by closing the gates for passing cars, but the crossings are both well protected by gates and flagmen and so far as appeared no accident has ever occurred at either one of them.

"This case was tried with the petition for the abolition of the Middlesex crossing and the evidence admitted of the financial condition of the Boston and Maine Railroad which was admitted against the petitioners' objections and subject to its exception, was considered in reaching the conclusion to which the commissioners have come.

"The commissioners are of the opinion that upon the facts and under all the circumstances, it is not necessary for the security and convenience of the public that either of said crossings be abolished at the present time, and so find and report to the court."

The minority member did not concur in the admission of evidence as to the financial condition of the Boston and Maine Railroad, but reports that, if the evidence was properly admitted, he concurs in the conclusion reached by his associates.

While the terms of the lease from the Nashua and Lowell Railroad Corporation to the Boston and Maine Railroad are not before us, the case has been argued and is decided on the basis that under its terms the latter is substantially interested in a financial way in the abolition of these crossings. .

The petitioners contend that the commissioners exceeded their authority in considering the financial condition of the Boston and Maine Railroad in determining whether the crossings should be abolished, contending that the test is the necessity of the alterations "for the security and convenience of the public," and that that must be determined wholly apart from the question of the financial condition of the parties who may be required to contribute or their ability to bear the resultant burdens. If this contention is correct, except as provided by St. 1914, c. 722, it applies equally to municipalities where the directors of railroads apply for abolition of grade crossings and the municipalities oppose such action.

All concerned represent public interests, and for that reason are largely subject to public control. The placing of a large expense upon a municipality must ordinarily result in increased taxation, debt or restriction of other municipal activities. In the case of railroad corporations, if the corporation is financially weak it must borrow money — assuming it can do so, issue additional stock — if there is a market therefor, increase its charges for transportation — if it can get the necessary authority, or cut down its expenses or decrease its facilities for serving the public, either or both — if it can do so. If a burden is imposed on a municipality, it must be borne by the part of the public directly or indirectly affected thereby. If the railroad has to pay a large amount, it ultimately falls on a considerable portion of the public, and affects private property which is impressed in a large measure with public control. There may be a practical limit to the fulfilment of the demands of security and convenience of the public. See *Commonwealth* v. *Boston & Northern Street Railway,* 212 Mass. 82; *Southern Railway* v. *State,* 95 Miss. 657; *Chicago, Rock Island & Pacific Railway* v. *Nebraska State Railway Commission,* 85 Neb. 818. Ability to respond to financial requirements made necessary by the abolition of a crossing is a proper subject for consideration when the public security and convenience are at issue.

Such considerations must be applied in the determination of many problems, home and business; they may be considered in the decision of questions affecting public convenience.

This conclusion is not forbidden by St. 1914, c. 722, § 1, which came into existence during the pendency of the petitions. Assuming that this statute affected the pending proceedings, it provided that after the commissioners had determined that the security and convenience of the public required alterations to be made in a crossing, the benefits to the municipality and its financial ability should be taken into account in fixing the percentage of the cost to be paid. Indeed, this statute recognizes the relevancy of such considerations by directing specific attention to them, and is not inconsistent with the existence of the power before its passage to weigh them whenever they properly affect the ability to perform a duty of a public character.

While the question involved has never been decided by this court, it has been said that evidence of the character considered by the commissioners is relevant in the decision of a somewhat analogous question. In *Commonwealth* v. *Cambridge*, 7 Mass. 158, 167, Parsons, C. J., speaking of the laying out of a new way, said: "The way prayed for ought to be of common convenience and necessity. By necessity is not to be understood absolute physical necessity; but so great a public benefit, that the want of the way is a great public inconvenience. Now the town, who have to pay the damages, form a part of the public; and it is but reasonable for the court to compare the extent of the damages to be incurred with the advantage to be received. And certainly although there may be a public advantage, yet it may be very small, and no equivalent for the damages, with which it is purchased." See also *Selectmen of Westwood* v. *Dedham & Franklin Street Railway*, 209 Mass. 213, 216; *Oregon Railroad & Navigation Co.* v. *Fairchild*, 224 U. S. 510, 528; *Seaboard Air Line Railway* v. *Georgia Railroad Commission*, 240 U. S. 324; *Erie Railroad* v. *Public Utility Commissioners*, 254 U. S. 394; *Woodruff* v. *New York & New England Railroad*, 59 Conn. 63, 93.

The denial of the motions to recommit to the commissioners was within the discretion of the judge. The reports and decisions of the commissioners were filed August 19, 1915, and although the motions for recommittal were filed seasonably, on September

14, 1915, they were not heard until late in 1920. In the meantime one of the commissioners had died and another had become one of the judges of the Superior Court. Under these circumstances it is clear that discretion was wisely exercised in the denial of the motions.

*Decrees affirmed.*