CITIZENS OF STRINGER, ETC. *v.* GULF, MOBILE & OHIO
RAILROAD COMPANY

No. 40226 October 22, 1956 90 So. 2d 25

*Gartin & Hester,* Laurel for appellants.

*John W. Adams, Jr.,* Mobile, Alabama; *Burns, Kendall & Mitchell,* Jackson, for appellee.

HOLMES, J.

The appellee, Gulf, Mobile & Ohio Railroad Company, presented its petition to the Mississippi Public Service Commission seeking the authority of the Commission to discontinue its agency at Stringer, Jasper County, Mississippi, and establish in lieu thereof a prepay station.

The petition alleged that the revenue received by the petitioner through its agency at Stringer is derived from the handling of carload freight and less-than-carload freight, and that such freight may be handled with substantially the same dispatch and efficiency without the services of an agent and that the public will suffer no material inconvenience as the result of the proposed change. The petition further alleged that the expenses of conducting the operations through the agency at Stringer exceeds the revenue derived therefrom by a substantial sum, and that economic waste will result unless the change is permitted. It was further alleged in the petition that the public convenience and necessity no longer require the maintenance of an agency station at Stringer.

The granting of the petition was protested by some of the citizens of Stringer, and after hearing the evidence the Commission found that the handling of incoming and outgoing shipments of carload traffic and less-than-carload traffic will not be handled with substantially the same dispatch and efficiency if the petitioner were allowed to discontinue its agency and substitute in lieu thereof a prepay station, and that the public would in the event of such substitution suffer material inconvenience. The Commission further found that in the event a prepay station were permitted to be substituted in lieu of the present agency, a greater inconvenience would re-

sult to the public. The Commission further found that the petioner furnished for the year 1954 not more than 90.6% of the carload shipping facilities requested by the citizens of Stringer, and that the number of shipments could be and would be materially increased if additional facilities for shipping were made available at Stringer, and that, therefore, if the petitioner lost money at Stringer during the year 1954 it was not as the result of shipments being unavailable or of the unwillingness of shippers at said point to use the facilities of petitioner if made available. The Commission further found that the public convenience and necessity would not be met by the substitution of a prepay station at Stringer in lieu of the present agency station.

In accordance with these findings, the Commission entered an order denying the petition. On an appeal by the petitioner to the circuit court judgment was entered reversing the order of the Commission and directing the Commission to enter an order granting the prayer of the petition, the court holding that there was no evidence to support the findings and order of the Commission. From this judgment of the circuit court the protestants prosecute this appeal.

The paramount questions presented on this appeal are whether the public convenience and necessity would be reasonably met by the substitution of a prepay station in lieu of an agency station at Stringer, and whether the findings and order of the Commission to the contrary are supported by substantial evidence or are purely arbitrary and capricious.

██ ■ Of course the power of a court of competent jurisdiction to review the order of the Commission to determine whether it is supported by substantial evidence or is purely arbitrary and capricious is beyond question. Dixie Greyhound Lines, Inc. v. Mississippi Public Service Commission, et al, 190 Miss. 704, 200 So. 579.

■■■ The further question is presented as to whether the requirement as to public convenience and necessity is such as to impose upon the appellee the duty of maintaining the agency station even though to do so would result in financial loss to the appellee. We recognize the well settled rule as announced in the case of Tri-State Transit Company of La., Inc. v. Dixie Greyhound Lines, Inc., 197 Miss. 37, 19 So. 2d 441, that the findings of the Commission under Section 7815 of the Mississippi Code of 1942 are prima facie correct and that the reviewing court can not substitute its judgment for that of the Commission and disturb its findings where there is any substantial basis in the evidence for such findings, or where the ruling of the commission is not capricious or arbitrary.

■■■ The rule is equally well settled, however, that where the essential facts are not contradicted, the reviewing court may determine as a matter of law whether the same are sufficient to support the order of the Commission.

We think this is a case in which the essential facts are uncontradicted and we relate them in determining their sufficiency to support the order of the Commission. In considering the facts it is to be borne in mind that it is not proposed by the appellee to abandon all service at Stringer, but it is proposed to provide a substitute service which it is claimed will adequately meet the requirements of public convenience and necessity at that point.

Stringer is an unincorporated community in Jasper County, Mississippi, located on appellee's line of railroad and situated 8.5 miles south of Bay Springs and 16 miles north of Laurel. It is situated on paved Highway No. 15, which connects Stringer with both Bay Springs and Laurel and runs parrallel with the appellee's line of railroad. The population of Stringer within a radius of one mile from its center is variously estimated to be from 200 to 450 persons. The trade territory served by

the present agency at Stringer covers about 9 square miles. The agent at Stringer has nothing to do with the operation of the telegraph or the operation of appellee's trains. The agent's working hours are 8 hours a day for 5 days a week. So small is the volume of business at Stringer that it requires the agent only about 30 minutes each day to perform his necessary duties. He is paid a salary of $3200 per year and the total expenses incurred in maintaining the agency at Stringer, including the salary of the agent, amounted for the year 1954 to $3575.19. The appellee serves Stringer with two freight trains per day, one northbound arriving in Stringer between 8:30 and 9:30 A.M., and the other southbound arriving in Stringer between 6:30 and 8:00 P.M. In the event the agency service is discontinued and a prepay station service substituted, no change would be made in the number of trains serving Stringer.

In addition to the train service, Stringer is also served by the Gulf Transport Company, which is a subsidiary of the appellee and owned by the appellee and which presently handles substantially all of the less-than-carload shipments into and out of Stringer. This truck line service delivers less-than-carload shipments to the places of business of consignees and also picks up for outbound shipment less-than-carload freight at the place of business of the shipper. Stringer is also served by two other truck lines, namely, the Stevens Truck Line and West Bros. Truck Line. Mail service in and out of Stringer is furnished by a highway post office which is operated by the appellee and will continue to be so operated by the appellee and will continue to be so operated if the agent at Stringer is removed.

In the event a prepay station is substituted, the freight on all outbound carload shipments will move collect. During the year 1954, there were 140 outbound carload shipments from Stringer, all of which moved collect. During the same period there were 49 inbound carload ship-

ments into Stringer, 35 of which moved prepaid and 14 of which moved collect.

Telephone service between Stringer and Laurel and Bay Springs is maintained. The telephone service to Laurel is toll free and the telephone service between Stringer and Bay Springs is made toll free by the appellee's acceptance of collect telephone calls. Under the present agency system, the request of shippers for cars is made to the agent at Stringer, who relays this request to the appellee's Laurel office where the requests are handled. No substantial less-than-carload business is conducted at Stringer. The gross receipts from such business during the year 1954 amounted to the sum of $124.94. According to exhibits introduced in evidence by the appellee and not contradicted, the total expense of maintaining the agency station at Stringer amounted to $13,806.90 in 1954, while the total revenue derived from the operation of the agency station for the same period amounted to $12,994.13, thus showing an annual loss to the appellee in the sum of $812.77 in the operation of the said agency station.

Two of the shippers testified that they were not furnished all of the cars which they requested for outbound shipments and that if such facilities were furnished them, they could increase their volume of business by approximately 30%. The Commission found that the loss sustained by the appellee was the result of its failure to meet the requests of shippers for shipping facilities, and that if such requests had been met the operation of the agency station would not have resulted in financial loss. The proof shows, however, no assurance on the part of shippers that they would so increase the volume of their business as to prevent a loss to the railroad company in the operation of the agency station and their testimony in this regard is speculative and uncertain. Assuming, however, that the shippers would so increase the volume of their business, it is shown as the result of a calculation

on the basis of figures introduced in evidence by the railroad company that to maintain said agency station the operation thereof would still result in an annual financial loss of approximately $300.00.

The appellants undertake to point out from the evidence certain inconveniences which they claim would result to the public in the event the agency station at Stringer is discontinued and a prepay station is substituted in lieu thereof. They say that if the agent should be removed at Stringer, all outbound shipments would be required to move collect since there would be no agent to accept payment for the outbound freight. The undisputed evidence shows, however, that in 1954 there were 140 out-bound carload shipments from Stringer and that all of these moved collect. It would appear, therefore, that the public convenience at Stringer would not be affected if the outbound carload shipments were required to move collect under the prepay agency station. It is further shown by the proof that if a shipper desired to send a carload shipment prepaid, he could go to Bay Springs and prepay the cost of the shipment, thus being required to travel a distance of approximately eight and one-half miles on a paved highway. However, since shippers have followed the practice of shipping their freight collect under the agency station, there is no reason to assume that they would undertake to do otherwise under the prepay station system, and certainly no reason to conclude that their convenience with respect to such shipments would be affected by the substitution of the prepay station.

With respect to less-than-carload shipments, the undisputed proof is that there were only 3 less-than-carload outbound shipments from Stringer in 1954 and only one of such shipments was prepaid. The handling of less-than-carload shipments at Stringer appears, therefore, to be negligible. The proof shows that these less-than-carload shipments are handled by Gulf Transport Company and

that if the shipper desires to send a shipment prepaid he may telephone toll free to either Laurel or Bay Springs and ascertain the amount of the freight charges and prepay the same to the driver of the truck.

The appellants further say that in the event of removal of the agent at Stringer there would be no one to receive payment for inbound carload shipments arriving collect. The proof is undisputed, however, that there were 49 inbound carload shipments into Stringer in 1954 and that 35 of these arrived prepaid and only 14 arrived collect. Thus the proof does not show that there would be any material difference in the substitution of the prepay station insofar as the convenience of the shipper is concerned. It is shown in the proof, however, without dispute, that if a shipper desires to have shipments sent collect he may establish credit with the railroad company and receive collect shipments, or drive to Bay Springs and pay the freight on such shipments, or arrange with shippers to send the shipments prepaid.

It is further urged by the appellants that inconvenience would result under the prepay station system in obtaining empty cars for outbound carload shipments. Under the proof it is shown that under the agency system a shipper desiring a car either telephones the agent or calls on him at the station. These requests for empty cars are all handled through the office in Laurel, and when the agent at Stringer receives such requests he relays them to Laurel for handling. Under the prepay station system, the shipper, instead of telephoning the agent or even going to the station, may telephone direct to Laurel and submit his request for cars, and under such circumstances, it does not appear that any inconvenience would result to the shipper. In fact, it would appear from this proof that by telephoning direct to the agent at Laurel, the matter of obtaining requested empty cars would be expedited.

Again it is said by the appellants that inconvenience would result to shippers in receiving notice of the arrival of carload shipments. The undisputed proof is that under the agency system consignees are notified by the agent at Stringer either by telephone or written card. If a prepay station is substituted, like notices would be sent or telephoned to the consignee from Laurel. As to less-than-carload shipments, the Gulf Transport Company makes its deliveries in most instances direct to the shipper at his place of business, and this same practice would continue whether an agent is maintained at Stringer or not.

It is further undertaken to be pointed out by the appellants that in the event of the substitution of the prepay station inconvenience would result in obtaining bills of lading on outgoing shipments. The undisputed proof is that under the agency system the agent at Stringer signs all bills of lading, but in the event of the substitution of the prepay station, the shipper may telephone toll free either to Laurel or Bay Springs and furnish the agent at either of those points with the necessary information and such agent will prepare the necessary bill of lading. The proof further shows that the appellee proposes in the event of the substitution of the prepay station to furnish the shippers with a pad of bills of lading forms and the shipper may himself make out his bill of lading and deposit it in a box provided by the appellee at the station, or as another alternative, the shipper may have the train conductor sign the bill of lading.

In view of the undisputed proof, it seems manifest to us that the inconveniences urged by the appellants as the result of substituting the prepay station are more imaginary than real. We think that it clearly appears from the uncontradicted facts not only that the continuance of the agency station at Stringer would result in substantial financial loss to the appellee, but that the proposed substitute service would reasonably meet the

requirements of public convenience and necessity. It follows, therefore, that we are of the opinion that there is no substantial basis in the evidence for the findings and ruling of the Commission. This conclusion finds support not only in the courts of other jurisdictions but in the prior decisions of this Court.

■■ We have no statute which imposes upon a railroad company the absolute duty to maintain an agency station. ■■■ In the absence of such a statute, the duty of the railroad company, if any, is to maintain an agency station where it is reasonably necessary to do so and where the public convenience requires it.

In 74 C.J.S., Railroads, Sec. 402(b), it is said: "While it has been said that unless a statute provides otherwise, a railroad has plenary power to determine whether or not it should keep an agent at any station, railroads are ordinarily under a duty to provide and maintain agents at stations, where reasonably necessary. However such duty, apart from statute, is at most incidental to the railroad's primary and absolute duty of furnishing transportation services, and it is not obligated to maintain an agent at every one of its stations, as at a station where the volume of business is not sufficient reasonably to demand the services of such an employee."

In the case of Atchison T. & S. F. Ry. Co. v. Ill. Commerce Commission, 397 Ill. 406, 74 N.E. 2d 885, the Court said:

"The findings of the appellee, the Illinois Commerce Commission, failed to state sufficient facts to support its conclusion that appellants should continue to maintain the station at Wilbern as an agency station. The firmly established rule is that it is unreasonable to require the maintenance of an agency station where the cost of such service is out of proportion to the revenue derived from the portion of the public benefited thereby, particularly where a substitute service may be provided which affords the same essential, although less conveni-

ent, service . . . . Among the factors to be considered in determining the question of the volume of business done at the station, are its proximity to other stations, the accessibility of the latter, and the cost of furnishing such service . . . . The convenience and necessity required to support an order of the Commission are those of the public and not of the individual or a number of individuals.''

In the case of Kurn v. State, 179 Okla. 440, 66 Pac. 2d 52, the Court said:

''It is not reasonable to require the maintenance of a full time agency station when the cost of such service is out of proportion to the revenue derived from that portion of the traveling public benefited thereby, especially where a substitute service may be provided which will afford the same essential service but is less convenient. The patronizing public, as a rule, have no right to demand conveniences without just compensation to the party furnishing the same. Neither an individual nor corporation as a rule can be required to furnish conveniences without just compensation or at a loss to itself.''

In Illinois Central Railroad Company v. Illinois Commerce Commission, 375 Ill. 585, 32 N.E. 2d 146, the Court said:

''The real question is, was it shown that the public good derived from the maintenance of the agency station overcame the loss in maintaining it as such? The application of this test in a case that does not involve an absolutely necessary service entails a balancing of the benefit to the public arising from a continuance of the agency against the loss to the railroad company. It is not reasonable to require the maintenance of an agency station when the cost of such service is out of proportion to the revenue derived from that portion of the public benefited thereby, especially where a substitute service may be provided which will afford the same essential service but which is less convenient.''

A like rule as that announced in the foregoing authorities has been adopted by the Supreme Court of Mississippi. Y. & M. V. R.R. Co. v. Miss. Railroad Commission, 166 Miss. 359, 146 So. 430; Western Union Telegraph Co. v. Miss. Railroad Commission, 74 Miss. 80, 21 So. 15. In the case of Y. & M. V. R. R. Co. v. Miss. Railroad Commission, supra, the Court said: ''The authorities are not in dispute that a common carrier can not be compelled to carry on its business, or a branch thereof, at a substantial loss.''

In the case of Western Union Telegraph Co. v. Miss. Railroad Commission, supra, the Court held that the findings of the Railroad Commission are not final and conclusive, but that the Commission is an administrative agency and its conclusions are subject to judicial inquiry. In that case it appeared that the telegraph company had previously applied to the Commission for permission to abandon its office at Fayette, which request was refused by the Commission because in its opinion the public convenience and necessity required the maintenance of the office. After the refusal of such consent, the telegraph company, without authority of the Commission, abandoned the office. The suit was to recover from the telegraph company a penalty for abandoning the office without the permission of the Commission. The Court in that case held that it was a good defense to show that the receipts and business at Fayette were insufficient to pay the expense of keeping the office open for business and that the continuance of the office would necessarily be at a loss to the company.

██ █ Irrespective, however, of the uncontradicted proof which shows that the continuance of the agency station at Stringer would be at a substantial financial loss to the appellee and would result in economic waste, we think that it clearly appears from the undisputed facts that the substitution of a prepay station at Stringer would adequately meet the reasonable requirements of the pub-

lic convenience and necessity at that point. Hence we are of the opinion that there is no substantial basis in the evidence to support the findings and ruling of the Commission and that the judgment of the circuit court was therefore correct and should be affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Lee* and *Ethridge,* JJ., concur.