VILLAGE OF MYRTLE, UNION COUNTY, MISSISSIPPI *v.*
ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, et al.

No. 41439         June 13, 1960        121 So. 2d 717

*Smallwood, Darden & Sumners,* New Albany, for appellants.

*D. W. Houston, Jr.,* Aberdeen; *James L. Homire, W. W. Dalton, J. E. McCullough, John C. Ashton,* St. Louis, Mo., for appellee.

GILLESPIE, J.

The appellee, St. Louis-San Francisco Railway Company, called Frisco, filed with the Mississippi Public Service Commission a petition for the discontinuance of the station agency at the Village of Myrtle, Mississippi. After notice by the Commission and the filing of protests by Myrtle and certain individuals, a hearing was held which resulted in an order by the Commission that the agency station at Myrtle be discontinued. The Commission found that its action closing the agency

at Myrtle was in the public interest. The Village of Myrtle appealed to the Circuit Court of Hinds County where the Commission's order was affirmed. Myrtle appeals to this Court.

■■■ The principal issue involves the construction of Section 7847, Mississippi Code of 1942, which is as follows:

"7847. Necessary depots to be maintained.—Every railroad shall establish and maintain such depots as shall be reasonably necessary for the public convenience, and shall stop such of the passenger and freight trains at any depot as the business and public convenience shall require. And every railroad shall establish and maintain a depot within the corporate limits of every incorporated city, town or village, through which said railroad passes; and the commission may cause all passenger trains to permit passengers to get on and off in a city at any place other than at the depot, where it is for the convenience of the traveling public. And it shall be unlawful for any railroad to abolish or disuse any depot when once established, or to fail to keep up the same and to regularly stop the trains thereat, without the consent of the commission."

The proof showed that the railroad employed an agent at Myrtle at a salary of from $350 to $400 per month, and all his duties could be performed in twenty to thirty minutes a day. The proof showed that the railroad has lost money in the operation of the station at Myrtle since 1956, and very little shipping was done at the station. The losses by years were as follows: 1956, the loss was $3660.01; for 1957, the loss was $4944.34. Very little freight was shipped or received at the station. Seven truck lines are available for service to Myrtle. Greyhound Lines furnish passenger service on the highway and stop at Myrtle. The closing of the agency at Myrtle will not affect passenger traffic or mail service on the railroad. If the station is closed at Myrtle, the railroad proposed servicing shipments through the sta-

tion maintained at New Albany, a distance of 7.8 miles from Myrtle. The railroad also maintains an agency at Hickory Flat, which is 6.3 miles from Myrtle. The Village of Myrtle has a population of 300 and is incorporated.

We are of the opinion that the Commission was fully justified in finding that the maintenance of the agency at Myrtle was economically infeasible, wasteful, and that there was no public necessity for such station.

Appellants' main contention is that Code Section 7847 takes the matter of maintenance of depots within an incorporated city, town or village out of the jurisdiction of the Commission. It is argued that the part of the statute reading, ''And every railroad shall establish and maintain a depot within the corporate limits of every incorporated city, town or village, through which said railroad passes,'' not only requires the establishment of a depot in every municipality, but the perpetual maintenance regardless of the public interest or need, and regardless of the losses sustained by a railroad in such maintenance.

It is contended by the railroad that the last sentence of the statute which provides that, ''And it shall be unlawful for any railroad to abolish or disuse any depot when once established, or to fail to keep up the same and to regularly stop the train thereat, without the consent of the commission,'' is a legislative expression of the Commission's jurisdiction to pass upon the matter of abandoning or disusing a depot which has been established.

■■ ■ The title to the statute, while not controlling as to its scope and purpose, indicates that it deals with the maintenance of the necessary depots. The first clause of the second sentence requires every railroad to establish and maintain a depot within the corporate limits of every incorporated city, town or village through which the railroad passes. But for the last sentence of the statute, it would require the permanent maintenance of

the depot after it is established. ██ ██ Since the statute must be read and construed as a whole, the last sentence must read in conjunction with the first clause of the second sentence. The last sentence is conjoined with the word "And". ██ ██ The conjunction "and" when used to connect phrases or sentences binds together and relates the one to the other. ██ ██ A sentence conjoined to a preceding one by the word "and" must be construed jointly with the preceding sentence. The sentence thus conjoined qualifies that which precedes it. See Words and Phrases, "And", Vol. 3. When the first clause of the second sentence was added to the statute in the Mississippi Code of 1906, it is apparent that it was legislatively determined that public convenience and necessity required the establishment and maintenance of a depot in every municipality through which a railroad then passed or through which one might be constructed. At the same time, it left in the statute the existing express authority of the Commission to consent to the abandonment or disuse of depots. If the legislature had intended to limit the Commission's authority to consent to the abandonment of depots to those located outside municipalities, it must be assumed it would have employed apt words to that effect. The last sentence in the statute, by use of the words "when once established," indicates that the legislature recognized that some depots established in municipalities might no longer be necessary.

██ ██ We are, therefore, of the opinion that the Commission had jurisdiction to hear the railroad's petition and decide the issue presented. We are of the opinion that incorporated communities, other than county seats (see Town of Sumner v. Illinois Central Railroad Co., 111 So. 2d 230), and unincorporated communities are in the same category insofar as the Commission's jurisdiction to consent to abandonment of a depot is concerned. The facts in the present suit amply justified the Commission's order. ██ ██ The facts are equally as favorable

to the railroad's position, or more so, than in the cases of Citizens of Stringer vs. Gulf, Mobile & Ohio Railroad Co., 229 Miss. 1, 90 So. 2d 25; Mississippi Public Service Commission v. Illinois Central Railroad Co., 235 Miss. 46, 108 So. 2d 573.

Appellant strongly relies on Southern Railway Co. v. State, 95 Miss. 657, 48 So. 236. In that case, the Commission had entered an order requiring the railroad to build a depot and stop its trains at Derma, an incorporated town. The railroad totally disregarded the Commission's order and the State brought mandamus to compel establishment of the depot. The lower court ordered the station built and the trains stopped, and this Court affirmed. It is noted that the proceedings started in that case by a petition to the Commission, and this was less than a year from the effective date of the addition to the statute requiring depots to be built in incorporated communities. That case did not take into consideration the jurisdiction of the Commission to consent to the abandonment of a depot ''when once established.'' There is language in the Southern Railroad Company case favorable to appellant's argument, but we do not consider that case as controlling the question now before us.

For the reasons stated the judgment of the learned circuit judge, which affirmed the Commission's order, should be affirmed.

Under the stipulation of the parties filed in this Court, the case is also affirmed as to Railway Express Agency, Inc., who joined in the petition of the Frisco Railroad.

Affirmed.

All Justices concur, except *Roberds, Holmes* and *Arrington, JJ.,* who took no part.