ILLINOIS CENTRAL RAILROAD COMPANY *v.* TOWN OF GOODMAN

No. 43425          March 22, 1965          173 So. 2d 116

*Wise, Smith & Carter,* Jackson; *Robert Mitten, John W. Foster,* Chicago, Ill., for appellant.

*Crisler, Crisler & Bowling,* J a c k s o n; *G. H. McMorrough,* Lexington, for appellee.

BRADY, TOM P., J.

Appellant, Illinois Central Railroad Company, hereinafter called Railroad, appeals from an order of the

Circuit Court of the First District of Hinds County, Mississippi affirming an order of the Mississippi Public Service Commission, hereinafter called Commission. Appellant, on May 16, 1963, had filed its application seeking authority to discontinue its agency station at Goodman, Mississippi and to substitute in lieu thereof a prepay station. The application set out the basic jurisdictional facts and met the statutory requirements relating to the proper filing of an application. It alleged that the agency station situated at Goodman is located in close proximity to other agency stations which are easily accessible by an all-weather highway, and that such points are connected by toll free telephone service; that the handling of mail and passenger service are not involved; that the train and over-the-road truck services will continue as before; that Goodman is a small community and that the patronage of the railroad services has declined to such an extent that the cost of agency services exceeds the revenue therefrom; that the public necessity and convenience no longer require or justify the continuance of agency service; that the petitioner proposes to discontinue agency service and substitute prepay service in the usual manner.

There was attached to the application the prerequisite statistical data required by the rules of the Commission, namely, (1) the number of shipments received and forwarded, (2) the amount of freight originating and terminating, (3) the Railroad's proportion of freight charges, (4) the Railroad's proportion of gross revenue, and (5) the total revenue, total expenses, and net profit or loss.

On May 17, 1963 the Commission published its regular notice. On June 25, 1963 a letter of protest was filed by the clerk and mayor of the town of Goodman. On August 15, 1963 a resolution, which was adopted by the Board of Trustees of Holmes Junior College on June 26, 1963, was filed with the Commission. On August 19, 1963 the cause came on for hearing before the Com-

mission, at which time oral testimony and other evidence were introduced by both applicant and protestants. At the conclusion of the hearing the matter was taken under advisement, and on October 1 the Commission entered its order denying the Railroad's application. On October 9 notice was given, and on October 14, 1963 the appeal was perfected.

Ultimately, on August 6, 1964, the cause came on for hearing in the Circuit Court of Hinds County, where the ruling of the Commission was affirmed, the circuit judge entering a written ruling. On August 19, 1964 the circuit court entered an order affirming the Commission's order. On August 24, 1964 an appeal was taken from the judgment of the circuit court, which was perfected on September 17, 1964.

The record discloses the following dominant facts which relate to the type of business, and which are not contravened by the appellee: (1) There is no passenger service involved at the station at Goodman. (2) The mail is handled by United States postal trucks and there is no mail service involved. (3) The express business handled at Goodman is negligible, the largest amount being only $322.17 in 1961. (4) There are no milk and cream shipments. (5) Western Union services were discontinued in 1961. (6) The only type of business, of any consequence, handled by the Goodman station is freight.

Insofar as the freight revenue is concerned it is undisputed that:

(1) The freight consisted of agricultural and forest products.

(2) During the twenty-six month period covered by the evidence, all outbound carload shipments consisted of 264 cars of logs, 378 cars of pulpwood, and 207 cars of cotton, making a total of 849 cars.

(3) All inbound carload shipments for the same period of time consisted of 60 cars of limestone, 30 cars

of gravel, 4 cars of coal, 2 cars of cottonseed hulls, and 1 car each of fertilizer, furniture, and tile, making a total of 97 cars.

(4) The nature of the freight business involves very few people who patronize the station. Of the 136 cars of pulpwood shipped in 1961, 132 were shipped by one person only, Mr. Arthur L. Land. In 1962 there were 182 cars of pulpwood, all shipped by Mr. Land. In 1961, 87 cars of cotton were shipped, and in 1962, 120 cars of cotton were shipped. Witness E. H. Stretton testified that his company, Flora Compress and Warehouse, handled, on the average, 3500 bales of cotton per year, which is approximately 100 cars. It follows, therefore, that almost all of the carload cotton shipments are made by one concern. The only other witness testifying in this regard was Mr. J. D. Neaves, who testified that he shipped cotton and that ninety to ninety-five percent of all his business went to the Flora Compress.

(5) The only other outbound shipment, that of logs, was made by E. L. Bruce Company.

It is likewise uncontradicted that:

(1) Goodman is situated on U. S. Highway 51, an all-weather, hard-surface road.

(2) Goodman is 9.6 miles from Durant by said highway, and 7.9 miles by rail; Goodman is 7.6 miles from Pickens by this highway, and 7 miles by rail.

(3) The agency at Durant never closes its doors and the Pickens station is an open station.

(4) Telephone service from Goodman to Durant or Pickens is toll free.

(5) Daily mail is carried from Goodman to both Pickens and Durant.

(6) Bus lines operate daily between the three towns.

(7) Less than carload shipments with the Railroad are operated by road trucks which service the Goodman station five days each week, with one northbound and one southbound truck each day.

(8) Braswell Truck Lines and Delta Truck Lines also serve the three towns.

The cost of furnishing the agency service is likewise undisputed, though the appellee, through the rulings of the Commission and the circuit court, contests the method or formula utilized by the Railroad in determining its operative costs in furnishing the Goodman agency. Appellant's evidence is not contested as to the following:

(1) The wages and allowances of the agent at Goodman were over $6,300 for the year 1962.

(2) The total of all of the other expenses of the agency, including the cost of transporting the freight, was $10,839.87.

(3) Not considering the other expenses of maintaining the open agency at Goodman, such as water, heat, electricity, furniture, fixtures and supplies, the agent's salary and requisite allowances alone add more than sixty percent of the total cost of all other expenses assignable to the Goodman station, including the cost of transporting the freight.

Considering the volume of business handled by the Goodman station, the record discloses from the statement introduced by the appellant as Exhibit 9, showing profit or loss incurred on business handled at Goodman, Mississippi for the years 1961, 1962 and the months of January and February, 1963, the following irrefutable facts:

| | Jan.-Feb. 1963 | Year 1962 | Year 1961 |
|---|---|---|---|
| 5. Percent of system freight expenses, rents and taxes (excluding station freight expenses) to system freight revenues. (Item 4 ÷ Item 1). | 82.70% | 78.10% | 78.79% |

7. Revenue assignable to Goodman, Mississippi. (1/2 of freight revenue plus all other revenue).   2 324 90   13 879 47   12 278 65

8. Direct station expenses at Goodman, Mississippi.   1 057 12   6 336 52   6 251 92

9. Other expenses assignable to Goodman, Mississippi, exclusive of station expenses. (Item 5 time Item 7).   1 922 69   10 839 87   9 674 35

10. Total Expenses assignable to Goodman, Mississippi. (Item 8 + Item 9).   2 979 81   17 176 39   15 926 27

11. Profit or loss incurred on agency service at Goodman, Mississippi. (Item 10 minus Item 7).    ( )  Denotes Contra

      (654 91)  (3 296 92)  (3 647 62)

The record discloses that the revenue assignable to Goodman (one-half of all incoming and outgoing freight revenue plus all other revenue) was in 1961, $12,278.65; in 1962, $13,879.47; and during the first two months of 1963, $2,324.90. These amounts are not disputed or contested by the appellee. By subtracting the total expenses assignable to the Goodman station from the revenue assignable to the Goodman station, the record discloses that Goodman station operated at a loss of $3,647.62 in

1961, at a loss of $3,296.92 in 1962, and at a loss of $654.91 for the first two months of 1963.

There are two issues presented by this appeal: First, does public necessity and convenience require the maintenance of agency service by the Railroad at the station at Goodman, Mississippi? Second, if the Railroad is operating its agency at a substantial loss, does the law compel the Railroad to carry on its business or agency station at Goodman? Appellant contends that both of these issues require a negative answer and therefore the order of the Commission should be reversed and judgment entered for the appellant.

As we have heretofore pointed out in the case of Mississippi Public Service Commission v. Illinois Central Railroad Company, 242 Miss. 853, 856, 136 So. 2d 619 (1962) (Anguilla), this case is likewise "controlled by the principles announced in Citizens of Stringer, Jasper County, Miss. v. Gulf, Mobile & Ohio Railroad Company, 229 Miss. 1, 90 So. 2d 25; Mississippi Public Service Commission v. Illinois Central Railroad Company, et al., 235 Miss. 46, 108 So. 2d 573; Mississippi Public Service Commission v. Illinois Central Railroad Company, 130 So. 2d 254; Village of Myrtle, Union County, Mississippi v. St. Louis-San Francisco Railway Company, 239 Miss. 110, 121 So. 2d 717."

Considering the first issue, of whether public convenience and necessity require the maintenance of the agency service at the station at Goodman, we find the following decisions and facts to be controlling. The statutes of Mississippi do not impose upon railroads the absolute duty of maintaining railroad agency stations. Citizens of Stringer v. Gulf, M. & O. R. R., 229 Miss. 1, 90 So. 2d 25. We likewise pointed out in Mississippi Pub. Serv. Comm'n v. Illinois Cent. R. R., 235 Miss. 46, 56, 108 So. 2d 573 (1959) (Lorman), that in the absence of a statute the railroad's duty, if any, is to maintain an agency station where it is rea-

sonably necessary to do so and public convenience requires it. Thus it is that the necessity must be reasonable necessity as distinguished from an unreasonable one. The convenience must be a public convenience as distinguished from a private convenience.

■■ ■ In resolving the issues presented, the second determining factor to be considered is the volume of business handled through the station. The record discloses that in order to determine the total of all freight charges of all shipments that come into the station and the total of all freight charges of the shipments that move out of the station, the company divides the sum total of both of these charges by two, for the reason that there are two stations involved in any outbound or inbound shipment of freight, and the revenue assignable to Goodman station is one-half of all incoming and outgoing freight revenue plus all other revenues, whatever they might be, and that for the year 1961 the total amount was $12,278.65. In 1962 the total amount of freight handled by Goodman was $13,879.47. During the first two months of 1963 the total amount of freight revenue was $2,324.90. The evidence of the Railroad on these points is not contested or disputed.

In passing, it is to be noted that the type and nature of the business and the revenue derived therefrom are comparable to the type of business and the revenue derived from the stations which have been authorized by this Court to be made prepay stations as shown in the cases cited above. We held in those cases that this type of business readily lends itself to non-agency service. In Mississippi Pub. Serv. Comm'n v. Illinois Cent. R. R. (Anguilla), *supra*, in 1956 the revenue assignable to the Anguilla station was $13,871.78, and in Mississippi Pub. Serv. Comm'n v. Illinois Cent. R. R. (Lorman), *supra,* the revenue assignable to the Lorman station in 1954 was $13,609.64.

The third factor to be considered is the additional cost of furnishing agency service. The exhibits disclose that the salaries, vacation allowances, payroll deductions and other benefits have increased over the years. In Yazoo and Mississippi Valley R. R. v. Mississippi R. R. Comm'n, 166 Miss. 359, 146 So. 430 (1933), the agent in that case was paid $120 per month, or $1,440 per year. In the case of Stringer v. Gulf, M. & O. R. R., *supra,* the agent's salary was $3,200 per year. In the case at bar the wages and allowances of the agent were over $6,300 for the year 1962. The record discloses also that for the year 1962 the total of all of the other expenses of the agency, including the cost of transporting the freight, was $10,839.87.

The fourth factor to be considered is the proximity and accessibility of other open agency stations adjoining the station in question. As noted above, the distance from Goodman to Durant by U. S. Highway 51 is 9.6 miles and by rail is 7.9 miles, while the distance from Goodman to Pickens by U. S. Highway is 7.6 miles and by rail is 7 miles. It appears, therefore, that the distances from the nearest agencies to the stations which were authorized to be discontinued in the cases considered by this Court cited above are very comparable to those distances in the case at bar. In the Stringer case the distances were 8.5 and 16 miles; in the Lorman case they were 7, 12.5, and 8.4 miles; in the Myrtle case they were 7.8 and 6.3 miles; in the Swan Lake case they were 6.4 and 11.8 miles; and in the Anguilla case the distances were 16 and 6 miles.

The fifth factor to be considered is the type of substitute service offered in lieu of agency service. Though the Commission and the briefs of protestants in the cases cited frequently refer to a station closing or station abandonment, actually this does not take place, for the station is not abandoned nor closed. The depot remains and is used and the trains and trucks continue to

make the same stops at the station and receive and discharge freight as usual. We pointed out in the Lorman case: "However, such duty (that of maintaining agents at stations), apart from statute, *is at most incidental* to the railroad's primary and absolute duty of furnishing transportation services . . ." 235 Miss. at 56. (Emphasis ours.)

The record in this case and briefs of appellant disclose that the substitute service which will be offered consists of two classes: (1) Carload shipments, and (2) less than carload shipments. Each of these classifications is divided into inbound and outbound shipments. All carload shipments inbound will continue to be brought in by the two local trains which operate through Goodman each day. The train crews will continue to disconnect and spot the cars, either on the consignee's siding or the company's siding. The agent's sole duty in the transaction is to notify the consignee of the arrival of the shipment. Under the proposed prepay station, this notification will be given either by telephone or by mail, or both, by the agent at either Durant or Pickens. In carload shipments outbound, the shipper will contact the agent to secure car or cars to be loaded. This order for cars will be placed by the shipper by telephone either to the Durant or Pickens stations, or the order may be placed by mail. It appears that there are no toll charges for telephone service from Goodman to either Durant or Pickens. If desirable, the shipper could place the order with the conductor of one of the local trains which daily operate through Goodman, or with a driver of one of the over-the-road trucks. Upon arrival of the car which has been ordered, it is spotted for loading in the usual manner by the train crew as in the past. After the car has been loaded by the shipper, a bill of lading is signed and the train crew picks up the car in the usual manner. The details re-

lating to the signing of the bill of lading are in this opinion hereinafter considered.

Less than carload shipments inbound will be brought in by the Railroad's over-the-road trucks and placed in the storeroom in the depot in the same manner as has been done in the past. Notification of the arrival of this freight will be made by an agent in an adjoining station. The storeroom at the station will either be left unlocked or keys will be furnished to some responsible merchant in Goodman and will be accessible to any consignee, and keys may be left permanently with the principal receivers of LCL freight. The consignee can then go to the station and receive his freight. Less than carload shipments outbound will be shipped from Goodman to be delivered by the shipper and placed in the depot warehouse as before. A bill of lading is prepared and signed (as hereinafter discussed) and the over-the-road truck driver picks up the freight at the depot and carries it out in the same manner as has been done in the past.

The record discloses that ample and adequate alternate services will be available and rendered to compensate for the services which will be discontinued by the termination of the open agency, so that the general public can be adequately served. The agent's duties which affect the general public, including the preparation and signing of bills of lading, requesting and obtaining cars, notification of car arrivals to consignees, and obtaining of credit arrangements for the receivers or senders of freight, can be assigned to and performed by other employees.

██ ██ Turning to the question of whether the Goodman Station has been operating at a financial loss and whether the Commission's finding that the Goodman station produced a net profit of $6,026.73 for the year 1961 and a net profit of $7,542.95 for the year 1962 is supported by evidence, we are compelled to state that

the Commission's finding is not supported by substantial evidence and violates the application of established accounting procedures repeatedly recognized and approved by this Court.

The Commission's order denying appellant's application to discontinue the agency operation at Goodman, Mississippi, among other findings, held that the indirect expenses should not be charged against the Goodman station and, to the contrary, asserted that only direct station expenses should be charged. This was based upon the belief that transportation would continue to be rendered whether or not the Goodman station was closed. The Commission further held, treating as expenses only the direct station expense, that the·Goodman station would show a net profit of $7,542.95. Thus, this holding abrogates the operation of the formula commonly known as the line-haul expense charge which this Court has held is applicable in every case of this nature which has been before it. The circuit court in the case at bar recognized that the use of the formula should be approved and stated in the order: "The general accounting system and line haul expenses have been accepted as the record of profit and loss by this Court and the Supreme Court."

In the Lorman case the formula for determining the line-haul expense was carefully analyzed and explained by this Court with approval as to the facts in that case, which are strikingly similar to the facts in the case at bar. This is set out in detail in 235 Miss. at 54, 55, 108 So. 2d at 577. The cost of hauling the freight must be considered in determining the profit or loss in the operation of a particular station. This is so fundamental that it requires no explanation. In the Lorman case, as in the case at bar, the contention is made that line-haul expenses should not be taken into consideration. We have consistently rejected this argument. In the Stringer, Myrtle, and Anguilla cases, as well as

in Mississippi Pub. Serv. Comm'n v. Southern Ry., 243
Miss. 197, 138 So. 2d 277 (1962) (Burnsville), and Mis-
sissippi Pub. Serv. Comm'n v. Illinois Central R. R.,
130 So. 2d 254 (1961) (Swan Lake), the same type of
formula was used which was approved by this Court.
In the Myrtle case the Commission itself ordered the
discontinuance of the agency station where the financial
loss was established by the railroad by utilizing the
formula which allocated line-haul expenses to the sta-
tion. This Court said in the Myrtle case: "We are of
the opinion that the Commission was fully justified
in finding that the maintenance of the agency at Myrtle
was economically infeasible, wasteful, and that there
was no public necessity for such station." 239 Miss.
at 115.

The circuit court in the case at bar conceded that
the formula had been approved by the circuit court
and by this Court, and yet for some specious reason
concluded that the line-haul expense allocated to Good-
man should not be deducted from the income obtained
from the station. Though there is no proof of such in
the record, the court nevertheless concluded that there
must be a compensating factor allowed the system for
similar services rendered by the Illinois Central Sys-
tem to other connecting lines. In the case at bar the
circuit court affirmed the order of the Commission for
the exact reason it had reversed the Commission in
former cases, thereby permitting the agency station to
be discontinued. Mississippi Pub. Serv. Comm'n v.
Southern Ry. Co., 243 Miss. 197, 138 So. 2d 277 (1962).

In conclusion, this record clearly demonstrates that
the cost of furnishing agency service was greater than
the cost at any of the stations directed to be closed
by this Court in the previous cases considered by it.
The type of substitute service in the case at bar is
substantially the same as the substitute service which
was offered in each of the previous cases considered

by this Court. The facts in this case likewise establish that the Commission's finding that public convenience and necessity require the agency's services to be continued at Goodman is not supported by substantial evidence. We see no reason for arresting the application of the formula assigning line-haul expenses to the Goodman station as it has been used in all previous cases before this Court in order to determine the profit or loss in the operation of the agency station as such. We have analyzed, applied and consistently approved the use of this formula, and to repudiate it now would be to reverse this Court's finding in all the cases cited herein. This formula has been used with approval continuously by the Circuit Court of Hinds County in all similar cases which it has considered.

We hold, therefore, that the undisputed evidence in this record shows that the operation of the station at Goodman as an agency station has resulted in a financial loss to the Railroad in the sum of $3,647.62 for 1961, $3,296.92 for 1962, and $654.91 for the first two months of 1963. It follows, therefore, that the Commission's finding that the Goodman station's operation produced a net profit of $6,026.73 for the year 1961 and a net profit of $7,542.95 for the year 1962 is not supported by substantial evidence, but is an unwarranted, erroneous conclusion reached by the Commission. It is well established by decisions of this Court and by decisions of the United States Supreme Court that a common carrier cannot be compelled to carry on its business or a branch thereof at a substantial loss. Citizens of Stringer v. Gulf, M. & O. R. R., 229 Miss. 1, 90 So. 2d 25 (1956); Yazoo & M. V. R. R. v. Mississippi R. R. Comm'n, 166 Miss. 359, 146 So. 430 (1933); U. S. Const. amends. V, XIV, sec. 1; Miss. Const. art. 3, secs. 14, 17 (1890). It was therefore error for the circuit court, in determining profit or loss, not to permit the deduction of that portion of the total gross freight

receipts, or line-haul, which went to lines other than the Illinois Central.

■■ ■ While it can be conceded that the convenience of three or four individuals will be affected by the discontinuance of the agency station at Goodman, nevertheless this does not constitute an impairment of public necessity or even public convenience, for the record discloses that the public at Goodman, Mississippi is not now, and has not been for a considerable period of time, utilizing the services of the agency at Goodman. The law of this state requires that an order of the Commission, in order to be valid, must be supported by substantial evidence. ■■ ■ This is likewise true of an order of a circuit court affirming a Commission's order of discontinuance of an agency station. ■■ ■ The appellant met the burden of proof that public convenience and necessity will not be impaired by closing the Goodman station, and proved that its losses justify such closing. The appellee has wholly failed to refute this prerequisite proof of the appellant. It clearly appears from the testimony of the witnesses in the case at bar that the continuance of the agency station at Goodman would be at a substantial financial loss to the appellant and would result in economic waste. This failure on the part of the appellee establishes the fact that the order of the Commission is capricious or arbitrary.

■■ ■ We do not consider appellant's contention that the Commission, rather than being an impartial quasi judicial body in the original hearing of this cause, took the affirmative for and in behalf of the protestants in deciding the issues in this case. However, in passing, we note that impartiality or objectivity is the polar star to guide tribunals on their courses of administering justice. Absolute objectivity as yet is unobtainable by human beings, but the closer approximation thereof is the legal Holy Grail for which earnest tribunals must eternally seek. These two cardinal factors, impartiality

and objectivity, are not only the safeguards of the rights of all litigants, but also are strong deterrents from judicial error.

We cannot permit the order of the Commission affirmed by the circuit court to stand in this case because the evidence in the record is insufficient to justify it. Therefore, the order of the circuit court and the Commission is hereby vacated and set aside. The judgment of the circuit court and the order of the Commission is hereby reversed, and it is the order of this Court that the application for discontinuance of agency service at Goodman, Mississippi and the institution of prepay service be and the same is hereby granted.

Reversed and order entered granting the appellant the right to discontinue agency service at Goodman, Mississippi, and substitute therefor prepay station service.

Reversed and judgment entered for appellant.

*Lee, C. J., and Jones, Patterson and Inzer, JJ.,* concur.