SMITH, Justice.
Mississippi Public Service Commission and the Town of Hernando appeal from a decree of the Circuit Court of the First Judicial District of Hinds County which reversed an order entered by the Commission, insofar as it directed Illinois Central Railroad Company to “maintain a full time agent at the depot station of every county seat during normal working days and working hours as it is the meaning, spirit and intent of the Mississippi Constitution Article 7, section 187 (1890),” and required it to maintain such a full time agent at every “depot station * * * where the volume of business is such that the services of a full time agent is necessary.” (Emphasis added).
The decree made an exception in the case of the Town of Hernando and affirmed that part of the Commission’s order requiring Illinois Central to maintain a full time depot agent at Hernando. From this part of the decree Illinois Central Railroad Company cross-appeals.
The Illinois Central had initiated what is referred to in the record as the “Mobile Agency Plan.” Its purposes are to provide additional and better freight service to its patrons and to effect substantial economies which in turn would benefit the public in the form of lower freight rates. After the plan had been placed in operation, several objections were filed with Mississippi Public Service Commission and that body issued a citation requiring Illinois Central to show cause why it should not suspend the operation of the Mobile Agency Plan.
The Commission’s order expressly approved the use of the Mobile Agency Plan but required Illinois Central, in addition, to maintain full time depot agents as stated above. The real issue on this appeal is not the operation of the plan, but whether, in addition, full time depot agents also must be employed by the railroad as provided in the order.
There is no dispute as to any material fact in the case and there were no issues of fact presented to the Commission for its decision.
A full evidentiary hearing was conducted by the Commission, the record of the evidence, oral and documentary, comprising 8 volumes.
At the conclusion of the hearing, the Town of Hernando was the single protestant to appear and object. The Commission based its order requiring maintenance of full time depot agents at all county seats expressly and squarely upon its own interpretation of Mississippi Constitution Article 7, section 187 (1890), considering this was mandatory. Section 187 is as follows:
No railroad hereafter constructed in this state shall pass within three miles of any county seat without passing through the same, and establishing and maintaining a depot therein, unless pre *427 vented by natural obstacles: Provided, Such town or its citizens shall grant the right of way through its limits, and sufficient grounds for ordinary depot purposes.
The circuit judge held that, by its plain terms, section 187 was not retrospective but applied only to railroads constructed after its adoption, and reversed the Commission on this point.
Section 187 appeared first in the Mississippi Constitution of 1890 which was adopted long after the Illinois Central line had been constructed. Since Hernando was excepted from the court’s decree reversing the Commission’s order, and the railroad was directed to maintain a full time depot agent there, Hernando’s position as an appellant is somewhat anomalous.
As there is no controversy as to facts, for convenience we adopt the Illinois Central’s description of its Mobile Agency Service Plan as set out in its brief.
Illinois Central Railroad Company developed and instituted a program known as Mobile Agency Service and other railroad companies have followed suit. Briefly stated, this plan provides for agents in certain key locations to be supplied with air-conditioned van trucks equipped with special radio-communication equipment, desks, chairs and other office furniture, typewriters, adding machines, xerox machines, and other office equipment and supplies. After completing the required work at his headquarters station each day, the agent sets out on a prescribed route in the customer service van, transacting business with the customers in the area by calling on them at their places of business or at the stations and sidings along the route, returning to his headquarters station to complete each day.
Customers Service Centers are established in each general area to which the public may communicate by utilizing a toll-free Enterprise telephone number and the centers are in direct radio contact with the agents on duty in the area. The Mobile Service Agent calls on the customers on his route who have requested regular calls or who have made a request to the agent prior to his departure or through the Customer Service Center while en route. The agent stops at each of the stations along his route and conducts such business as is available at those points.
The Customer Service Van is equipped with all of the facilities and supplies of an agency depot plus some additional equipment, and can serve the customer’s needs in the same manner as if the customer had called on the agent in the depot. In addition, the Mobile Service Agent may contact the train crews in the area by radio, obtain information and communicate instructions for special train service as he moves along the route. The agent may also obtain information for the customer via radio contact with the Customer Service Center and through its communication and data processing facilities, with the general offices in Chicago. By being in position to serve the customer at any point in the area, the agent may make on-the-spot inspections of cars which have been loaded or unloaded, accept shipments and issue bills of lading, issue seals, inspect and adjust claims and perform such other services as can be performed at that location. In addition, the agent performs a number of other duties for the company while on the route, such as inspecting trains as they pass various points, conducting other safety procedures, delivering train orders, inspecting facilities, et cetera.
The Mobile Agency Plan has two primary purposes. First, it furnishes additional and better services to the patrons of the railroad. Second, it permits the railroad company to effect substantial economies which in turn benefit the public in the form of lower freight rates.
*428 The testimony in the 8 volume record overwhelmingly supports the contention of Illinois Central to the effect that its services to its customers will be made much more efficient, convenient, and readily available, and will result in substantial economies to the railroad, of which the public will be an ultimate beneficiary.
Tables introduced showed that, where depot agents are regularly maintained at these stations, the agent is actually engaged in performing duties for the railroad and waiting on customers only a very few hours a week. The remainder of the time, so far as service to customers and work of the railroad is concerned, he is left to spend in unproductive idleness. It was also in evidence that there was an agreement between Illinois Central and its employees authorizing it to institute the plan so that problems similar to those which have sometime arisen with reference to full crew laws and featherbedding are not expected to occur.
In the main, appellants rely upon Town of Sumner v. Illinois Central Railroad Company, 236 Miss. 342, 111 So.2d 230 (1959) to support their contention that the Commission correctly interpreted Mississippi Constitution Article 7, section 187 (1890) as having being retroactive in effect and as mandatorily requiring all railroads running within three miles of a county seat, regardless of whether such railroads were constructed before or after the adoption of the Constitution of 1890, to pass through and maintain a depot and a full time depot agent at such county seat.
However, the Court’s opinion in Sumner, supra, makes it clear that Mississippi Constitution Article 7, section 187 (1890) operates prospectively only. In Sumner, supra, the Court, in speaking of section 187, said: “The Constitution of 1890 took effect on November 1, 1890, before the railroad here in question was built. * * * no reference whatever to railroad depots generally was made in the Constitution. * * * ”
In Sumner v. Illinois Central Railroad Company, supra, it is stated:
The reason for the adoption of this provision [Section 187] was that, prior to 1890, railroad companies, in a number of instances, had refused to build their lines through county seats. Mississippi Constitutions by George H. Ethridge, p. 348. The framers of the Constitution were evidently of the opinion that, in the future, newly built railroads, if they passed within three miles of a county seat, should serve the town and its citizens. (Emphasis added).
See also State v. Mobile, J. & K. C. R. Company, 86 Miss. 172, 38 So. 732 (1905) where this Court construed section 187 and said:
We are therefore of the opinion that it was the design and intention of the framers of our Constitution to require simply that railroads thereafter constructed, whose routes should pass within three miles of the town at which by law the county site was located, should pass through the corporate limits of the municipality, and establish and maintain a depot therein; * * *. (Emphasis added).
We think the circuit judge was correct in holding, as a matter of law, that the Commission erroneously construed section 187 as applying to and controlling the present case. The circuit judge reversed that part of the Commission’s order, based expressly upon that erroneous conclusion of law, which provided that Illinois Central maintain a full time depot agent at all county seats, without regard to whether the railroad was constructed before or after November 1, 1890, the date of the adoption of the Constitution. In so doing, the circuit judge acted correctly.
The circuit judge also reversed that part of the Commission’s order requiring Illinois Central to maintain a full time depot agent at stations (not otherwise identified) “where the volume of business is such that *429 the services of a full time agent is necessary during normal working days and working hours.” The circuit judge considered this provision to be actually “meaningless” and to have determined no issue in the case before it. We agree that this part of the Commission’s order was merely the declaration of an abstraction.
The railroad’s duty to maintain stations is embodied in Mississippi Code 1942 Annotated section 7847 (1956), which apparently first appeared in Mississippi Code 1892, as section 4302. It is not necessary to consider whether this statute applies to railroads built before its enactment. This statute has been construed by this Court in several former cases. Mississippi Public Service Commission (Town of Ethel) v. Illinois Central Railroad Company, 207 So.2d 95 (Miss.1968); New Orleans & N. E. Railroad Company v. Town of Heidelberg, 194 So.2d 866 (Miss.1967) ; Illinois Central Railroad Company v. Town of Goodman, 252 Miss. 297, 173 So.2d 116 (1965); Mississippi Public Service Commission (Burnsville) v. Southern Railway Company, 243 Miss. 197, 138 So.2d 277 (1962); Mississippi Public Service Commission (Anguilla) v. Illinois Central Railroad Company, 242 Miss. 853, 136 So.2d 619 (1962); Mississippi Public Service Commission (Swan Lake) v. Illinois Central Railroad Company, 130 So.2d 254 (Miss.1961); Village of Myrtle, Union County v. St. Louis-San Francisco Railway Company, 239 Miss. 110, 121 So.2d 717 (1960); Town of Sumner v. Illinois Central Railroad Company, 236 Miss. 342, 111 So.2d 230 (1959); Mississippi Public Service Commission (Lorman) v. Illinois Central Railroad Company, 235 Miss. 46, 108 So.2d 573 (1959); Citizens of Stringer v. Gulf, Mobile & Ohio Railroad Company, 229 Miss. 1, 90 So.2d 25 (1956);
In Village of Myrtle, Union County v. St. Louis-San Francisco Railway Company, supra, this Court, in upholding the Public Service Commission’s approval of the abandonment of a depot, said:
We are of the opinion that the Commission was fully justified in finding that the maintenance of the agency at Myrtle was economically infeasible, wasteful, and that there was no public necessity for such station.
Neither the proceedings nor the hearing conducted by the Commission in the present case involved an issue as to whether or not the maintenance of any particular station was economically infeasible or wasteful, or whether there was public need for such station, within the meaning of the Court’s language in the Village of Myrtle case. In Village of Myrtle, this Court said:
We are, therefore, of the opinion that the Commission had jurisdiction to hear the railroad’s petition and decide the issue (abandonment of the station) presented.
 In proceedings presenting the issue, the Commission will have jurisdiction to decide whether, as to any particular station, maintenance of the depot and a full time depot agent is economically feasible or demanded by public necessity. In the present case, however, neither the public need nor the economic feasibility of operating any particular station was at issue before the Commission. We agree with the circuit judge that the portion of the Commission’s order requiring maintenance of a full time depot agent at every station where the “volume of business is such that the services of a full time agent” are necessary during normal working hours, is without effect and leaves the case of each particular station in the same status as it was before the order was entered.
Finally, on cross-appeal, Illinois Central challenges that part of the decree affirming the Commission’s requirement of a full time depot agent at Hernando. As to this, the circuit judge, in his opinion, adverted to a former appeal to his court by Illinois Central, in a different case, styled “Illinois Central v. Town of Hernando”, *430 No. 19,000 on the docket. In that case, Illinois Central had appealed from an order entered by the Public Service Commission, and the circuit judge recalled that he had reversed, and had remanded the case to the Commission for its determination of the factual question involved, which was that of “profit and loss” in the operation of the depot at Hernando. This former case, said the circuit judge, remained upon the Commission’s docket and had not been decided. We think the circuit judge erred in making an exception of the Town of Hernando, and in requiring that a full time depot agent be maintained there. The earlier case, involving the issue as to whether maintenance of the Hernando depot and full time agent was economically feasible or brought about a loss so that it might be abandoned under the rule in Village of Myrtle, supra, was according to the circuit judge, a pending matter upon the docket of the Public Service Commission to which it had been remanded for the determination of this factual question. It was no longer before the circuit judge.
In Illinois Central Railroad Company v. Town of Goodman, 252 Miss. 297, 173 So.2d 116 (1965) the Court held:
It is well established by decisions of this Court and by decisions of the United States Supreme Court that a common carrier cannot be compelled to carry on its business or a branch thereof at a substantial loss.
On direct appeal the decree of the circuit court will be affirmed in all respects except as to the requirement of a full time depot agent at Hernando. As to that provision, on cross-appeal, those provisions of the decree requiring Illinois Central Railroad Company to maintain a full time depot agent at the station in the Town of Her-nando are reversed and set aside, without prejudice, however, to the rights of the parties in the case of Illinois Central Railroad Company v. Town of Hernando, No. 19,000, now pending before the Public Service Commission.
Affirmed in part and reversed in part.
GILLESPIE, P. J., and PATTERSON, INZER and ROBERTSON, JJ., concur.